I. Massari, *Appellant*, v. C. Salciccia, *Appellee*.
136 So. 522.
Division A.
Opinion filed August 7, 1931.

*Morris M. Givens,* for Appellant;
No appearance for Appellee.

BUFORD, C.J.— On September 22, 1930, C. Salciccia and I. Massari having been then and theretofore engaged in a co-partnership in the grocery business at No. 1402 Highland Ave., Tampa, Florida, entered into a contract dissolving that partnership, which contract was in words and figures as follows, to-wit:

"This agreement, made and entered into on this day 22nd of September A. D. 1930, by and between C. Salciccia of Hillsborough County, Florida, hereinafter party of the first part, and Ignacio Massari of Hills-

borough County, Florida, hereinafter party of the second part;

Witnesseth: 1. That the copartnership composed of C. Salciccia & Ignacio Massari under the firm name of C. Salciccia and Massari located at the number 1402 Highland Ave., Tampa, Fla., has this day been dissolved by mutual consent.

2. The party of the first part for and in consideration of the sum of Ten Hundred Dollars to him in hand paid by the party of the second part, and for other good and valuable consideration, has and by this presents does give, bargain, sell and convey his good will in the aforesaid business to the said party of the second part.

3. It is expressly agreed by and between the party hereto that the party of the second part assume and agree to pay all debts and obligations of the copartnership of C. Salciccia & Massari mentioned in paragraph number 1 of this agreement and to save harmless the said C. Salciccia from all liability thereon. It is well and mutual agreed that the said C. Salciccia could not go on the Grocery Business for a period of two years.

In witness whereof the said party of the first part and second party have hereunto set their hands and seals in duplicate this day and year first above written.

Signed, sealed and            C. Salciccia
delivered in our              I. Massari
presence:
Nicolo Massari
G. B. Massari.

State of Florida, County of Hillsborough. I, G. B. Massari, a Notary Public in and for the State of Florida at large do hereby certify that on this the 22nd day of September, A. D. 1930, before me personally appeared C. Salciccia, Ignacio Massari to well know to be the same persons of the names described in and who executed the foregoing agreement and to me severally acknowledged that they did freely and voluntarily executed the same for the uses and purposes therein expressed.

Witness my hand and official seal this day and year last above written.

                              G. B. Massari
(Notorial Seal)              Notary Public
    Notary Public, State of Florida at Large.
    My commission expires Mar 7 1931.''

On February 25, 1931, Massari filed bill of complaint in the Circuit Court of Hillsborough County by which he sought to have decreed amongst other things that Salciccia be required to execute the transfer of title to a truck which was incident to and used in connection with the grocery business and which passed to Massari with the grocery business, and also to enjoin Salciccia, his agents and employees, from engaging in the grocery business in Tampa, Florida, and more especially at No. 1402 Highland Ave., it being alleged in the bill that Salciccia disregarding his obligation in the contract conveying good will of the business to Massari and further disregarding that part of his contract in which it was agreed between the parties that "the said C. Salciccia could not go on the grocery business for a period of two years."

The bill of complaint prayed for other relief which was not warranted. There was a general and special demurrers to the bill, all of which were sustained and the bill of complaint dismissed.

The contract between the parties hereinbefore quoted must be construed in the light of the intention of the parties and clearly it was the intent of the parties by that contract to provide that Salciccia would retire from the grocery business and that his former partner, Massari, would have his good will with the purchase of said business and that Salciccia in consideration of the sale to Massari would not go into the grocery business so as to come in competition with Massari for a period of two years.

Assuming that this was, and is the proper construction of the contract, the contract is enforceable in equity under the modern doctrine which doctrine has been held to apply in this State in the case of Lee vs. Clearwater Growers Association, 93 Fla. 214, 111 Sou. 722, in which case the Court said:

"In construing statutes and contracts against monopolies or in restrain of trade both State and Federal Courts

in this country have applied the rule of reason rather than the literal import of the statute and have said in substance that it must amount to an undue or unreasonable restraint of trade. It must in other words be such a restraint as to be detrimental to public welfare and obnoxious to public policy. Courts universally indulge the presumption that all contracts are legal and when legal on its face its illegality must be alleged and proven. There is no attempt here to limit production or control or to fix the price in any market of the commodities embraced in the contract, and so far as we have been able to find no contract has been declared void that does not do this. United States v United States Steel Corporation 251 U. S. 417, 64 L. ed. 343, 40 Sup. Ct. Rep. 293; Tobacco Growers Co-op. Ass'n. v Jones, supra; Brown v Staple Cotton Co-op. Ass'n, supra; Washington Cranberry Growers Ass'n. v Moore, supra; The English rule appears to be that when the restraint is such only as will afford a fair protection to the interests of the party in favor of whom it is given, and is not so large or extensive as to interfere with the interest of the public, it will be sustained. Horner v. Graves, 7 Bing. (Eng.) 735, 20 E. C. L. 310.''

In 13 C. J. 473, the writer, after having stated earlier tendency of the courts toward construing contracts of this kind, says:

''The tendency of the modern authorities is to reject the fixed rules stated in the preceding sections, and to gauge the validity of the contract by the reasonableness of the restraint imposed as necessary to the protection of the covenantee. This doctrine is founded on the idea that public policy requires that when a man has by his skill or by any other means obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market, and in order to enable him to do it is necessary that he should be able to preclude himself from entering into competition with the purchaser; and therefore, the same public policy which enables him to do that should not forbid him from alienating what he wants to alienate, but should permit him to enter into any stipulation, however restrictive it may be, provided such restriction in the judgment of

the court is not unreasonable, having regard to the subject matter of the contract. Hence, a stipulation by a purchaser of any trade, business or profession that he will not exercise the same trade or business so as to interfere with the value of the trade, business or thing purchased is reasonable and valid.''

The decision in the case of Lee vs. Clearwater Growers Association, supra, places this Court in harmony with those holding to what is known as the modern doctrine in this regard. See Diamond Match Co. v. Roeber, 13 N. E. 419.

In Wood v. Whiteheard Bros. Co., 59 N. E. 357, Justice Gray speaking for the Court said:

''The State has a right to limit individual rights where their exercise touches the public interests, and if unrestrained, would be prejudicial to order or to progress. The doctrine which avoids a contract for being one in restraint of trade is founded upon a public policy. It had its origin at a time when the field of human enterprise was limited, and when each man's industrial activity was, more or less, necessary to the material well being and welfare of his community and of the State. A discussion of the doctrine and of the history of the law appear in the cases of Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, and of Leslie v Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456. The conditions which made so rigid a doctrine reasonable no longer exist. In the present practically unlimited field of human enterprise there is no good reason for restricting the freedom to contract, or for fearing injury to the public from contracts which prevent a person from carrying on a particular business. Interference would only be justifiable when it was demonstrable that, in some way, the public interests were endangered. But contracts between parties, which have for their object the removal of a rival and competitor in a business are not to be regarded as contracts in restraint of trade. 'They do not close the field of competition except to the particular party to be affected.' ''

The bill is not without equity. The complainant has stated sufficient facts to entitle him to the relief prayed, except as to an accounting. The bill shows upon its face that

no accounting is necessary; that there has been an account stated between the parties and that the amount of the indebtedness has already been definitely fixed. If the allegations are true the complainant has adequate remedy at law to enforce his rights in this regard.

For the reasons stated, the decree appealed from is reversed with directions that further proceedings be had not. inconsistent with this opinion. It is so ordered.

Reversed.

WHITFIELD AND BROWN AND DAVIS, J.J., concur.

ELLIS AND TERRELL, J.J., not participating.