IRELAND et al. v. CRAGGS et al.
No. 6188.

Circuit Court of Appeals, Fifth Circuit.
March 11, 1932.

786

H. M. Hampton, of Ocala, Fla., and A. G. Turner, of Tampa, Fla., for appellants.

R. L. Anderson, Jr., of Ocala, Fla., and C. P. Dickinson, of Orlando, Fla., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Under an agreement with stockholders of the Ocala Lime Rock Company, a corporation engaged in the business of mining and selling lime rock for road material purposes in the state of Florida, C. E. Ireland, acting for the Birmingham Slag Company, purchased from each of them the shares of stock in the company standing in his name. In the contract of purchase dated July 31, 1925, this restrictive covenant appears: "It is further agreed between the parties that upon the closing of this transaction as herein provided for, that the parties of the first part shall not either directly or indirectly engage in the business of mining and selling limerock for road material purposes without the written consent of the party of the second part or the Birmingham Slag Company, at any point in the State of Florida within a term of ten years from this date."

Ocala Lime Rock Company was reincorporated under the name of Ocala Lime Rock Corporation; two of the old stockholders took stock in the new company, and that corporation continued actively to carry on the business of its predecessor. The defendants Cleary and Craggs, however, did not do so, and without securing the written consent of Ireland or the Birmingham Slag Company some time before the filing of this suit took stock in another corporation, the Williston Shell Rock Company, a corporation engaged in the business of mining and selling lime rock for road material purposes, in active competition with the Ocala Lime Rock Corporation. Conceiving themselves entitled to injunctive relief against the re-entry into the business of defendants Cleary and Craggs in violation of their covenant not to do so, plaintiffs brought this bill against them, the Williston Shell Rock Company, and the state road department of Florida, alleging the facts above, and more specifically that the defendants Cleary and Craggs have taken over all or a majority of the stock of the Williston Shell Rock Company, assumed its management, and are now actively engaged in the business which in their contract they agreed to abstain from.

The bill further alleged that the defendant Craggs, being in control of the Williston Company has been lately for that company obtaining many contracts with the state road department of the state of Florida through a process of grossly underbidding for the purpose of trying to injure and damage petitioners and the Ocala Lime Rock Corporation, which is and has at all times been the largest lime stone producer in Florida, with the purpose and hope to force that company to again buy him out of business. It was further alleged that the damages which might be recovered are uncertain and without measure; that a necessity exists for an accounting, and that plaintiffs' remedy at law is inadequate. The prayer was for an injunction against the defendants Craggs and Cleary, and the Williston Company, restraining them from violating the contract; that the state road department of Florida be required to account for the number of contracts which it had with the Williston Company; that that department be enjoined from paying the Williston Company any moneys under contracts with them; that the defendants generally be required to render an accounting so that plaintiffs may determine the damages which they have sustained from the breach of the contract; that they may have a personal judgment against the defendants Craggs and Cleary for all their damages sustained, and that they may have general relief.

Defendants filed motions to dismiss the bill, setting up against it two grounds; (1)

That it seeks the enforcement of a contract, which, seeking to control competition in a business in which the public has an interest, is void as contrary to public policy; (2) that, seeking to enforce a joint contract, it shows upon its face that two of the contractors have been released, and that therefore the defendants also have been.

Without opinion or a statement of the grounds of the ruling, the motion to dismiss was sustained. This appeal has resulted.

Restrictive covenants of the general nature of the one in question here are quite uniformly sustained as valid against the claim that they are invalid as in restraint of trade. This much appellees concede. The point they make against this contract is that the particular subject-matter with which it deals, being the transaction of business with the state and its subdivisions looking to the paving of its public roads, is so affected with a public interest as to make contracts tending to affect the cost of such materials void as against public policy.

Primarily courts must look for the public policy of a state striking down contracts, especially those fully executed on one side, to the statutes of the state; secondarily, to the decisions of its courts. M., K. & T. Ry. Co. v. Carter, 95 Tex. 476, 68 S. W. 159, 164; St. Regis Candies v. Hovas, 117 Tex. 313, 3 S.W.(2d) 429, 433. There is no Florida statute which denounces as illegal contracts like the one pleaded; there are no decisions of its courts which do so. On the other hand, the courts of Florida liberally uphold the view that "parties sui juris may * * * make such contracts as suit their respective conveniences and necessities and will be bound by such contracts in so far as they are not prohibited by law," Newsom v. Acacia Mut. Life Ass'n (Fla.) 136 So. 389, 392; that, provided they are willing to pay the piper, they may call their own tune, Massari v. Salciccia (Fla.) 136 So. 522, 523; McQuaig v. Seaboard Oil Co., 96 Fla. 275, 118 So. 424. It is the rule generally that, where one tardily ascertaining, after he has had the fruits of a contract, that his agreement was illegal, invokes the public interest "the interest of others than the parties," Beasley v. T. & P. R. R., 191 U. S. 492, 24 S. Ct. 164, 166, 48 L. Ed. 274, to enable him to keep the fruits of his contract without standing to his bargain, courts are slow to follow such interested leading. They will cautiously determine for themselves whether there is a dominant public interest, an "interest of others than the parties," involved in the enforcement of the contract sufficient to overthrow the fundamental public policy that men full grown and of sound mind may not, while holding to the benefits of a contract, escape its burdens. Twin City Pipe Line Co. v. Harding Glass Co., 283 U. S. 353, 51 S. Ct. 476, 477, 75 L. Ed. 1112; Baltimore R. R. v. Voigt, 176 U. S. 505, 20 S. Ct. 385, 44 L. Ed. 560.

"The power to make contracts is too valuable a right to be lightly swept away under the general declaration that such contracts are contrary to public policy." M., K. & T. Ry. Co. v. Carter, supra.

"The general rule is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." Twin City Pipe Line Co. v. Harding Glass Co., supra.

It may be that in fact there was a monopolistic purpose on the part of plaintiffs which has tainted the contract so that it must be stricken down. Anderson v. Shawnee Compress Co., 17 Okl. 231, 87 P. 315, 15 L. R. A. (N. S.) 846. It may be that, though such purpose was absent in the inception of the contract, the character and state of the business is such that by the contract and operations under it, if it is enforced, plaintiffs will obtain a monopoly, or bring about a condition which the public policy of Florida forbids. It is perfectly clear, however, that neither such purpose nor such result fairly appears from the allegations of the bill. What does appear from them is that a contract of the kind usually held valid, not only generally elsewhere, but in the state of Florida (Massari v. Salciccia, supra), has been breached by two of the parties to it after they have obtained its fruits, under such circumstances as to make a case for equitable cognizance. In this situation the bill should be retained for hearing on the merits (Dixon and Kellogg v. Hopkins (C. C. A.) 56 F.(2d) 783) when, if there has been any violation of the public policy of the state in the making or enforcement of the contract, this may be made to appear.

Nor do defendants stand any better upon the second ground of the motion, that the contract is unenforceable against them because a joint and indivisible one, binding all or none. Contracts are divisible or indivisible, joint or several, according to the intention of the parties derived from the nature of the subject and the language used. They may be divisible as to some of the covenants, indivisible as to others. Cosden v. Scarborough (C. C. A.) 55 F.(2d) 634; Sin-

clair Oil Co. v. Bryan (Tex. Civ. App.) 291 S. W. 692, 694; In re John B. Rose Co. (C. C. A.) 275 F. 409; Worthington v. Gwin, 119 Ala. 44, 24 So. 739, 43 L. R. A. 382; Quarton v. Am. Law Book Co., 143 Iowa, 517, 121 N. W. 1009, 32 L. R. A. (N. S.) 1; Anderson v. Nichols, 93 Vt. 262, 107 A. 116. That this contract is, as to the restrictive covenants sued on, individual and not joint, we think does not admit of question. This is a case of individual stockholders, each agreeing to sell his own stock and each agreeing that he will not, during the time and within the limits of the contract, re-engage in the business. Unlike agreements by partners for the partnership that it will not engage in business (Streichen v. Fehleisen, 112 Iowa, 612, 84 N. W. 715, 51 L. R. A. 412) this is not an agreement by the contractors for the corporation that it will not engage in business, but quite the contrary. It is an agreement by the stockholders that the corporation will continue in the business from which the stockholders are retiring. Each stockholder was paid individually for his stock; each delivered his stock individually; each stockholder must individually abide the obligations of the agreement which he assumed in exchange for the price which he received.

The motion to dismiss should have been overruled. The decree sustaining it was erroneous; it is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.