**PALM TAVERN, INC.,** a corporation organized and existing under and by virtue of the Laws of the State of Florida, v. **AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,** a Voluntary Association organized and existing under the laws of the State of New York.

15 So. (2nd) 191      June Term, 1943
October 5, 1943            Division A

*Tyrus A. Norwood,* for appellant.

*E. Harris Drew,* for appellee.

BUFORD, C. J.:

On January 18, 1943, the appellant Palm Tavern, Inc., a corporation and existing under the laws of the State of Florida, which will hereafter be referred to as the Tavern, and American Society of Composers, Authors and Publishers, a voluntary Association organized and existing under the laws of the State of New York, which will hereafter be referred to as the Society, executed a contract whereby the Society under alleged authority vested in it, granted a license to the Tavern and the Tavern accepted such license to publicly perform at . . . New Palm Club . . . ; West Palm Beach, Fla. . . . and not elsewhere, non-dramatic renditions of the separate musical compositions copyrighted by members of the Society and listed in the office of the Comptroller of the State of Florida.

The contract contained the following provisions:

"2. This license is not assignable nor transferable by operation of law, devolution or otherwise, and is limited strictly to the licensee and to the premises above named. The license fee herein provided to be paid is based upon the performance of such non-dramatic renditions for the entertainment solely of such persons as may be physically present on or in the premises described, and does not authorize the broadcasting by radio-telephone, transmission by wire or otherwise, or such performances or renditions to persons outside of such premises, and the same is hereby strictly prohibited unless consent of the Society in writing first be had.

"3. This agreement and the license herein granted shall not extend to or be deemed to include:

"(a) Oratorios, choral, operatic or dramatico-musical works (including plays with music, revues and ballets) in their entirety, or songs or other excerpts from operas or musical plays accompanied either by words, pantomime, dance or visual representation of the work from which the music is taken; but fragments or instrumental selections from such works may be instrumentally rendered without words, dia-

logue, costume, accompanying dramatic action or scenic accessory, and unaccompanied by any state action or visual representation (by motion picture or otherwise) of the work of which such music forms a part.

"(b) Any work (or part thereof) whereof the stage presentation and signing rights are reserved.

"4. Society reserves the right at any time to withdraw from its repertoire and from operation of this agreement, any musical work, and upon any such withdrawal licensee may immediately cancel this agreement. Either party to this agreement may, at any time, upon giving to the other party thirty days prior notice in writing, by registered United States mail, terminate this agreement. Upon the termination of this agreement pursuant to any provision of this Article '4', there shall be made to the Licensee a pro rata refund of any unearned license fees."

It also contains the following provisions:

"7. Society agrees to indemnify, save, hold harmless and defend Licensee from and against any claim, demand or suit for copyright infringement that may be made or brought against Licensee by any member of Society with respect to the renditions of the kind and nature of those described and licensed herein and given at the location herein licensed during the term hereof of the separate musical compositions heretofore copyrighted or composed by members of Society and now or hereafter during the term hereof in Society's repertory or hereafter during the term hereof copyrighted or composed by present members of Society or by future members of Society so long as such future members shall be members of Society. Licensee shall promptly give Society written notice of any such claim, demand or suit, together with the original or a copy of all documents received in connection therewith, and Society at its own expense, shall have sole charge of the defense of any such suit or proceeding, with which defense Licensee agrees to cooperate."

On the 12th day of August, 1943, appellant filed its bill of complaint in the Circuit Court of Palm Beach County seeking a declaratory decree under the provisions of Chapter 21820, Acts of 1943, adjudicating and determining whether or not

the contract above referred to was a legal and binding contract under the laws of Florida.

It appears from the allegations of the bill of complaint that it was and is of vital importance to both parties to the contract to be advised by judicial decree whether or not such contract is legal and valid.

It is alleged in the bill of complaint that the Tavern is engaged in the business of dispensing food and refreshments to its patrons and, among its other services, it maintains an orchestra and floor show for the entertainment of its patrons and that it is necessary for its orchestra and floor show to use a substantial amount of popular musical compositions copyrighted under the copyright laws of the United States.

It is further alleged that the public performing rights of such music are owned by various authors, composers and publishers located in various parts of the United States, as well as in foreign countries. That unless one engaged in the business aforesaid and using such music has authority from the owners of the public performance rights of such music so used, he could not use the music without being liable for damages for infringement under the Federal Copyright Act. That it is practically impossible to secure a separate license from each of the composers, authors and publishers and that because of this condition the composers, authors and publishers have granted to the Society the right to issue blanket licenses to persons engaged in such business as is the Tavern and that the furnishing of the music for the entertainment of its patrons by the Tavern is a vital and necessary part of its business. That the Society is composed of the various composers, authors and publishers who own the copyrights and that, as a matter of convenience, those various composers, authors and publishers have adopted the Society as a vehicle for the licensing of their respective writings, compositions and publications and have authorized the Society, through its officers, to license the use of such material by those engaged in business such as that operated by the Tavern and others.

The constitutionality of Chapter 21820, Acts of 1943, is not brought into question.

The defendant alleged that the contract was not in violation of the provisions of Section 543.01, Fla. Statutes 1941, and that the operation of the Society in all respects conforms to the requirements of Chapter 543, and especially to Section 543.22, and that the license referred to was issued pursuant to provisions of Section 543.23, all Fla. Statutes, 1941.

After hearing before the Court, the chancellor on the 24th day of August, 1943, made his findings of fact based upon exhibits filed in the cause and testimony taken before him as follows, to-wit:

"1.   That the defendant, American Society of Composers, Authors and Publishers, hereinafter referred to as the 'Society' entered into the contract with the plaintiff, Palm Tavern, Inc., dated January 18, 1943, a copy of which is attached to the plaintiff's bill of complaint and both parties have treated the contract as legal and binding.

"2.   That the right of the defendant to execute said contract has been raised and this suit was filed by the plaintiff under the provisions of Chapter 21820 Laws of Florida, 1943, to determine the legality of said contract, which involves the question of whether or not the defendant is prohibited from doing business in the State of Florida by Chapter 543, Florida Statutes, 1941.

"3.   To determine the preceding question it is necessary for the Court to determine whether or not the defendant is such a combination of authors, composers and publishers of copyrighted music as is prohibited from doing business in the State of Florida by Section 543.01 Florida Statutes 1941, and, if so, does Section 543.22 of said Statutes allow the defendant to do business in the State provided it complies with the requirements thereof.

4.   In February, 1941, the United States brought suit in the Southern District of New York against the Society as defendant, charging the Society with being an unlawful monopoly in restraint of trade in violation of the provisions of Sherman Anti-Trust Act.   In that action the defendant Society consented to a decree of injunction on March 4, 1941, which is a part of the record in this action.   Pursuant to the said consent decree the formation and method of operation

of the Society substantially changed in the following important particulars, viz:

"(a) That the defendant no longer has—as theretofore exclusive licensing rights of the musical compositions of its members and that the owners of the public performance rights reserved the right to themselves to license and sell these rights independently of the Society.

"(b) That the Society is not permitted to discriminate in price or terms between licensees similarly situated.

"(c) That the Society is required to sell any music user who may request the same, a license at prices fixed by it for the performance of specific compositions.

"(d) The members of the Board of Directors of the Society are now elected directly by the general membership of the Society and their successors are elected in a like manner, and not by the remaining members of the Board as theretofore.

"(e) Any author or composer is eligible for membership in the Society who has had one musical composition published when such person actually practices the profession of writing music, or the text, or lyrics or musical works or compositions and there is no longer a requirement that five musical compositions be published as a condition to membership.

"5. That on May 18, 1942, the defendant after extended conferences with the Attorney General of the State of Florida, duly complied with the provisions of Chapter 19653, Laws of Florida, 1939, as appears from the Certificate of the Comptroller's office of the State of Florida, which was filed in evidence herein and that thereafter said defendant also filed with the Secretary of State of Florida its designation authorizing said Secretary to accept service of process on behalf of defendant as required by said Statute. That the State officials charged with the enforcement and administration of these Acts have examined the structure and manner of operation of the defendant Society, have arranged with the Society compliance formalities, have accepted from the Society the fees and taxes required to be paid under the 1939 Act for more than one year and have allowed the Society to conduct its business during this time, which administrative inter-

pretation is persuasive to this Court of the fact that the Society is legally doing business in the State of Florida.

"6. The constitutionality of Chapter 543, Florida Statutes, 1941, has not been questioned or raised by either party to this suit. Another paragraph follows, the contents of which is immaterial" and thereupon entered the following decree:

'The Court being otherwise fully advised in the premises, it is accordingly, Considered, Ordered, Adjudged and Decreed:

"1. That the defendant Society is not a price fixing combination operating illegally in restraint of trade in the State of Florida in violation of Section 543.01, Florida Statutes, 1941, and is, therefore, not prohibited from doing business within the State by virtue of said Section.

"2. That the defendant Society has legally complied with the provisions of Chapter 19653, Laws of Florida, 1939, and was therefore competent and qualified to execute the contract with the plaintiff referred to as plaintiff's Exhibit 'C'; that the contract entered into between the plaintiff and the defendant Society referred to as plaintiff's Exhibit 'C' is a valid and enforceable contract under the laws of this State.

"Done and Ordered this 24th day of August, A.D. 1943.

"Jos. S. White,
Judge."

We have found nothing, either in the contract or in the record of the proceedings below, which indicates that the contract is contrary either to the Statute or to the Federal Statutes.

"Since the constitutionality of Chapter 21820, supra, is not questioned, we refrain from any comment in that connection. The price-fixing, if it be called such, as is reflected by the contract here under consideration is not such as to be in restraint of trade, because there is no monopoly. It is specifically provided that the user of the material which is licensed by the Society may contract directly with the owner of the copyright or may otherwise acquire the right to use the material as such contracting party may see fit.

The creation of the Society appears to have been in the interest of the authors, composers and publishers and they are all members of said Society, the policy of which is controlled by the election of its officers. Such a society may become an instrument of oppression and its affairs might be so conducted as to violate our statute cited, supra, and to violate the Federal Trust Laws. But the record here shows that the affairs of the Society are not so conducted.

It is generally held that such statutes as those just referred to are intended to include within their provisions those contracts which unreasonably restrain trade and competition, as well as those monopolies, or efforts to monopolize, that are contrary to public policy but where the design is not to create a monopoly the contract will be held valid and not in violation of the statute where its provisions are such only as to fairly protect the interest of the parties to the contract and is not of such character as to interfere with the interest of the public. See 36 American Jurisprudence 608-609; Yazoo and M.V.R. Co. v. Searles, 85 Miss. 520, 37 So. 939; Brock v. Hardie, Sheriff, et al., 114 Fla. 670, 154 So. 690; Massari v. Salciccia, 102 Fla. 847, 136 So. 522; Apex Hosiery Co. v. Leader, 84 L. Ed. 913, 128 A.L.R. 1044.

The appellant has not cited us any authority upon which it may reasonably be contended that the contract is illegal.

The record amply supports the findings of the chancellor and no error is made to appear to have occurred in the granting of the decree.

It is, therefore, affirmed.

So ordered.

TERRELL, CHAPMAN and ADAMS, JJ., concur.