353 So.2d 944 (1978)
PENSACOLA ASSOCIATES, Appellant,
v.
BIGGS SPORTING GOODS COMPANY, Appellee.
No. DD-485.
District Court of Appeal of Florida, First District.
January 11, 1978.
*945 Donald A. Gifford and John W. Puffer, III, of Shackleford, Farrior, Stallings & Evans, Tampa, for appellant.
W.H.F. Wiltshire of Harrell, Wiltshire, Stone & Swearingen, Pensacola, for appellee.
ERVIN, Judge.
Pensacola Associates appeals an order dismissing its complaint seeking both specific performance of a certain lease provision entered into between it and Biggs, and damages for violation of the provision. The order stated that section 6.12(iv)[1] of the lease was an unlawful restraint of trade as prohibited by Section 542.12(1), Florida Statutes (1975).
During the first four years after the execution of the lease, Biggs opened a similar store in a shopping center which, the complaint alleged, was within the three mile radius described in the contract. It also alleged that despite repeated demands by Pensacola Associates, Biggs refused to enter into a supplemental agreement to include the gross sales of the store in University *946 Mall with the gross sales of the Biggs store in Cordova Mall as required by section 6.12(iv).
We have found no Florida decisions applying Section 542.12 to covenants within a lease. Both parties agree that 542.12(1) controls the applicable lease provisions. It is necessary for us to determine whether the broad language in Section 542.12(1) providing "[e]very contract by which anyone is restrained from exercising a lawful, profession, trade ... otherwise than is provided by subsections (2) and (3) hereof, is to that extent void ..." permits any reasonable exceptions. Pensacola Associates argues the restraint imposed by the lease should be subjected to a reasonable standard test.[2] Biggs contends subsection (1), allowing no express exceptions, must be construed so that a contract which in any manner restrains trade is void as a matter of law.
There are very few Florida cases interpreting the effect of subsection (1). In Bergh v. Stephens, 175 So.2d 787 (Fla. 1st DCA 1965), we strictly construed the scope of subsection (1) as applied to a restrictive covenant in a doctor's employment contract which prohibited him from competing within a ten mile radius for five years following termination of his employment. We stated the doctor was not involved in a "business" as referred to in Section 542.12(2), but was instead engaged in a profession as provided by Section 542.12(1). We stated such "contracts are void to the extent of the restrictive provisions unless those contracts are held to fall in the exceptional contracts described in subsection (2)." Id. at 789. We concluded subsection (2) had no application because it made no reference to a profession, as did subsection (1).[3] There being no exceptions under subsection (1), the contract was declared an illegal restraint of trade.
The ruling in Bergh was later modified by the Florida Supreme Court in Akey v. Murphy, 238 So.2d 94 (Fla. 1970), holding that subsection (3), pertaining to the dissolution of partnerships, applied to a physician's profession  not subsection (1)  so that a test of reasonableness would be employed and the contract entered into between the parties was enforced.
A year later the court, construing a pension plan which was alleged violative of Section 542.12(2), invalidated a provision in the plan as unreasonable which permitted the employer to suspend or terminate benefits to any retiree who, following his retirement, engages in a business in competition with the employer. Flammer v. Patton, 245 So.2d 854 (Fla. 1971). The opinion was careful to point out that Florida courts have "historically ... been hostile to contracts of any nature which place restraints upon former employees." Id. at 857. Since the case involved a construction of subsection (2), pertaining to employment contracts, it does not control a contract such as here which is subject to the provisions of subsection (1). The court's opinion in Flammer, however, as well as in Akey v. Murphy, supra, is instructive since it states that when a Florida statute is adopted from a statute of another state, we should adopt that state's judicial construction of the statute. In Murphy the court relied upon cases from California and Oklahoma which have statutes similar to Section 542.12.
Complying with the Florida Supreme Court's dictates, we consult those states' decisions which have construed statutes *947 similar to subsection (1). For example, in Great Western Distillery Products, Inc. v. John A. Wathen Distillery Co., 10 Cal.2d 442, 74 P.2d 745 (1937), the supreme court sustained an agreement attacked as violative of the state's antitrust statute (Section 1673 of the Civil Code), which had given one party the exclusive right to purchase warehouse receipts from the other party. In turn, the buying party could trade in no other distillery warehouse receipts. In applying a reasonableness standard to the restraint, the court stated:
"In our view of the contract, its terms indicate that it was entered into, not for the purpose of restricting any trade or business, but for the purpose of promoting one. It is true the contract makes the plaintiff, except one other, the exclusive purchaser in California of the defendant's warehouse receipts, but obviously, both the purpose and effect of the contract are, not to restrict the sale of the defendant's receipts, but to create an instrumentality by which the receipts will be exploited and sold. The contract does not restrain anyone from exercising a trade or business of any kind within the purview of section 1673 of the Civil Code.
Statutes are interpreted in the light of reason and common sense and it may be stated as a general rule that courts will not hold to be in restraint of trade a contract between individuals, the main purpose and effect of which are to promote and increase business in the line affected, merely because its operations might possibly in some theoretical way incidentally and indirectly restrict trade in such line. This view has often been sustained by the Supreme Court of the United States in analogous cases. See numerous cases cited and digested in Ripy & Son v. Art Wall Paper Mills, 41 Okla. 20, 136 P. 1080, 51 L.R.A., N.S., 33." 74 P.2d at 746. (Emphasis added.)
Upon rehearing, the court cited numerous cases to the effect: "The decisions in this state have recognized and applied the distinction made by authority elsewhere that if the public welfare be not involved and the restraint upon one party be not greater than protection to the other requires, the contract will be sustained though it in some degree be said to restrain trade." Id. at 748.
Similarly a covenant agreed upon by a store lessee and a shopping center lessor which provided no additional store space would be leased to competitors for the sale of men's and boys' ware was held not in violation of the state's restraint of trade statute (Title 15, Section 217, Oklahoma St. 1961). Utica Square, Inc. v. Renberg's Inc., 390 P.2d 876 (Okl. 1964). The court quoted with approval the following language from Keating v. Preston, 42 Cal. App.2d 110, 108 P.2d 479, 486:
"`When a covenant in a lease prohibiting a lessor from demising other property in the same building or vicinity to be used for conducting a competing business tends to create a monopoly in the lessee or constitutes a limitation in restraint of trade, it will be strictly construed against the lessee... . The modern trend[4] of authorities, however, is to construe such statutes as Section 1673 of the Civil Code, and contracts between individuals intended to promote rather than to restrict a particular business "in the light of reason and common sense" so as to uphold reasonable limited restrictions.'" Id. at 880-881. (Emphasis added.)
Federal courts interpreting section one of the Sherman Antitrust Act (15 U.S.C. § 1) have refused to apply a per se rule voiding all contracts affecting trade but have interpreted the Act as invalidating only those contracts or combinations unreasonably restraining competition. E.g., Northern Pac. Railway Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); Savon Gas *948 Stations No. 6, Inc. v. Shell Oil Company, 309 F.2d 306 (4th Cir.1962), cert. den., 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 719 (1963); Goldberg v. Tri-States Theater Corp., 126 F.2d 26 (8th Cir.1942).
Unquestionably the provisions of section 6.12(iv) of the lease affected Biggs Sporting Goods Company's trade. Still we reject Biggs' argument that Section 542.12(1) must be mechanically applied without considering the circumstances or the reasonableness of the restriction. It is obvious that the purpose of lease clauses such as section 6.12(iv) is to protect the developer's percentage rentals by insuring that the tenant devotes his best efforts to generating sales within the center.[5] There was no outright prohibition against Biggs operating a similar store within the three miles radius, rather that the gross sales from such store be added to the gross sales of the store within the shopping center for the purpose of computing the percentage rentals. Prima facie this restriction appears reasonable. Restrictive covenants, not involving any application of anti-trust statutes, have been held enforceable covering radii of two miles, Arnold Bros. v. Kreutzer and Wasem, 67 Iowa 214, 25 N.W. 138 (1885); 20 miles, Smith v. Durkee, 166 Mich. 484, 131 N.W. 1116 (1911); in the same city, Massari v. Salciccia, 102 Fla. 847, 136 So. 522 (1931) or county wide, Tobler v. Austin, 22 Tex.Civ.App. 99, 53 S.W. 706 (1899).
There may be here a question of fact whether the restriction affecting similar stores operating within a three mile radius from the center was or was not reasonable insofar as its being necessary to the protection of Pensacola Associate's rentals. This is a matter which we do not need to make inquiry at this juncture, however. Biggs is free to present evidence bearing upon the question of the reasonableness of the restraint under the circumstances of the case. We simply hold section 6.12(iv) is not violative as a matter of law of Section 542.12(1).
REVERSED.
BOYER, Acting C.J., and MILLS, J., concur.
NOTES
[1] further covenants and agrees that it will not engage, directly or indirectly, nor through a subsidiary or affiliated corporations, nor through partnerships or other commercial entities, and that no officer or director and no shareholder owning more than five (5%) per cent of the stock of Tenant, if Tenant be a corporation, will engage in the same or in any business similar to that to be conducted on the Demised Premises within a radius of three (3) miles from the extreme limits of Landlord's Premises during the term of this Lease and all renewals and extensions thereof. The restrictions of this Section shall not apply to any such business of Tenant open and doing business within said radius as of the date of the execution of this Lease. Such restriction shall also not apply to any such business of Tenant opened for business to the public within said radius after the date of the execution of this Lease, provided that Tenant agrees in writing with Landlord that the gross sales made with respect to said business shall be added to the gross sales from Tenant's business in the Demised Premises for the purpose of computing percentage rental under this Lease; provided further that gross sales shall not be included from any store opened after four (4) years from date hereof within said three (3) mile radius, but the minimum annual rental required in Section 5.10 hereunder shall be increased by an amount equal to thirty-five ($.35) cents per square foot of the floor area in the demised premises (as specified in Article II hereof) commencing on the date said store shall open for business."
[2] At common law, restrictive agreements were sustained if they were (1) ancillary to a valid contract; (2) necessary to protect the covenantee's enjoyment of the contract benefits, and (3) not primarily intended to restrain competition. Mitchel v. Reynolds, 24 Eng.Rep. 347 (Ch. 1711). See United States v. Addyston Pipe & Steel Co., 85 F. 271, 282-83 (6th Cir.1898), modified and aff'd., 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899). This is the modern rule. See cases cited in Annot., 97 A.L.R.2d 4, pp. 14-15 (1964).
[3] Later, however, in Citizens National Bank of Orlando v. Shell Oil Co., 232 So.2d 230 (Fla. 4th DCA 1970), the Fourth District Court of Appeal held that Sec. 542.12(1) was not per se violated by a restrictive covenant prohibiting the grantor from selling or advertising gasoline on or from property then or afterward owned by the grantor.
[4] Earlier California cases had construed the statute (§ 1673, Civil Code, now § 16600, California Business and Professions Code) mechanically, so as to void any restraint upon trade. E.g., Vulcan Powder Co. v. Hercules Powder Co., 96 Cal. 510, 31 P. 581 (1892); Merchants' Ad-Sign Co. v. Sterling, 124 Cal. 429, 57 P. 468 (1899); Chamberlain v. Augustine, 172 Cal. 285, 156 P. 479 (1916).
[5] A strong argument has been advanced that lease clauses which restrict tenants in shopping centers from operating competing stores within a certain specified distance from the center should be upheld as reasonable restraints since they protect the developer's percentage of rentals by insuring that his tenants devote their best efforts to generating sales within the center. The Antitrust Implications of Restrictive Covenants in Shopping Center Leases, 86 Harv. L.Rev. 1201, 1233 (1973) (footnote no. 127). While a second store operated by the same tenant within the same trade area might be at a competitive disadvantage to the store within the center it is still likely to siphon off at least some customers from the center, resulting in decreased sales and decreased income. Ibid. Additionally, it is suggested that instead of an outright ban against the tenant's operation of a similar store within a given distance from the center, a less restrictive means could be employed for protecting the developer's rentals by providing "the lessor can add the gross sales of any store within the proscribed area to the gross sales of the leased store within the center for the purpose of computing the lessee's rental payments." Id. at 1234. Consequently "it would appear that the restriction is reasonably necessary in order to protect the main leasing transaction." Ibid.