420 So.2d 920 (1982)
Fletcher J. HERNDON, Jr., Appellant,
v.
The ELI WITT CO., Appellee.
No. AL-158.
District Court of Appeal of Florida, First District.
October 21, 1982.
*921 Michael F. Coppins, of Douglass, Davey & Cooper, Tallahassee, for appellant.
Jeffrey H. Abrams, of Roberts, Baggett, LaFace, Richard & Wiser, Tallahassee, for appellee.
WIGGINTON, Judge.
This appeal is from an interlocutory order of the trial court denying Herndon's motion to dissolve a temporary restraining order.[1] The court upheld a covenant not to compete contained in a settlement agreement and found that the five-year/three-state prohibition "is not so unreasonable or repugnant as to make it patently offensive." We affirm.
The covenant at issue forms an integral part of a settlement agreement entered into between Fletcher Herndon and the Eli Witt Company on April 16, 1981. Eli Witt is a Florida corporation engaged in the business of wholesale distribution of tobacco, candy, package goods, sundries, and other items. Herndon was, until his voluntary resignation on March 24, 1981, an employee of Eli Witt. He had been with Eli Witt for twenty-two years, and at the time of his resignation was branch manager for the company in Tallahassee, Florida.
On or about April 1, 1981, following Herndon's resignation, Eli Witt filed an action against him in the Second Judicial Circuit, in and for Leon County, Florida. Eli Witt alleged that Herndon had "surreptitiously obtained confidential business information and other trade secrets" with the intent to use them in a competing business; that in the course of Herndon's twenty-two year employment, he had access to Eli Witt's customer lists, route books, and price lists, and had attempted to convert the company's trade secrets to his own use; and, finally, that Herndon had revealed confidential corporate information, including financial statements and sales data, to one of Eli Witt's competitors which was contemplating engaging in business in the Tallahassee area. The complaint prayed for temporary and permanent injunctions against Herndon, and others, from directly or indirectly using the customer lists, route books, and price lists, requiring a return of all confidential corporate information and trade secrets, an accounting for all sums obtained through a breach of Herndon's fiduciary duty to his employer, and an award of costs and other appropriate relief.
The filing of the complaint initiated a series of conferences between and among Herndon, his codefendants, and Eli Witt corporate officials and corporate counsel. The discussions culminated on April 16, 1981, in the "Agreement" under which Eli Witt voluntarily dismissed its complaint against Herndon. In exchange, Herndon promised: (1) to return to Eli Witt all customer lists, route books, price lists, financial statements, and any other corporate documents; (2) to pay Eli Witt the sum of $800 as and for damages; (3) not to solicit employees of Eli Witt to engage in business with or work with Herndon in any business in competition with Eli Witt; (4) to withdraw a competing application for a wholesale dealer's license that he had filed with the "Division of Beverage" under a fictitious name; and (5) not to compete with Eli Witt, in specific and unambiguous terms.
Specifically, the covenant not to compete, contained in Paragraph 4 of the agreement, provides:
The Employee shall not, for a period of five years from the date of this Agreement, engage, participate, or become interested, directly or indirectly, and with or without his fault, in any business that is in competition in any manner with that of Employer in the states of Florida, Georgia and Alabama, whether as employer, principal, partner, stockholder, corporate officer, corporate director or in any other individual or representative capacity whatsoever. Should a court of competent jurisdiction determine this paragraph is unreasonable as to either *922 the extent of the geographic area or the time period of five years or both, then the Parties shall abide by a determination of the court as to what is reasonable and, as so amended by the court, this paragraph otherwise shall remain in full force and effect.
The agreement as a whole served to terminate litigation in the case.
It was Herndon's alleged violation of the above covenant not to compete which spawned the second complaint filed by Eli Witt. In its complaint and amended complaint, Eli Witt alleged irreparable harm if Herndon was not restrained from engaging in business with its competitors, and prayed, inter alia, for temporary and permanent injunctive relief. Shortly after filing its amended complaint, Eli Witt filed an Emergency Motion for Temporary Restraining Order with attached affidavits, asking the court to temporarily enforce the agreement in limited scope, i.e., order Herndon not to assist Eli Witt's competitor, without ruling on the geographical and temporal boundaries at that time. The court granted the motion.
Herndon immediately filed a Motion to Dissolve the Temporary Restraining Order which motion was denied. This appeal ensued.
In its order and supplemental order denying Herndon's Motion to Dissolve, the trial court refused to hold the covenant not to compete void under Section 542.33(1), Florida Statutes (1981) as a contract in restraint of trade, because Herndon and Eli Witt were not in an employer/employee relationship at the time the agreement was signed, a factor which would otherwise bring the agreement within the exception contained in Section 542.33(2)(a).[2] Rather, in rejecting Herndon's "mechanical application" of Section 542.33(2)(a), the court reasoned that the covenant "emanated" from the employer/employee relationship and was "imbued" with those qualities. Considering the circumstances which led to the agreement, the confidential information obtained by Herndon over the course of his twenty-two year employment with Eli Witt, and Eli Witt's voluntary dismissal of the litigation arising from the employer/employee relationship, the court estopped Herndon from claiming the "noncompete clause" void, and determined its geographical and temporal prohibitions to be not so unreasonable as to be patently offensive.
On appeal, Herndon argues that the exclusion set forth in Section 542.33(2)(a) does not contemplate the enforcement of a covenant not to compete when the covenant is entered into after the parties have terminated their employer/employee relationship. We agree. The statutory language in Section 542.33(2)(a) is specific and distinctly excludes from the general prohibition embodied in subsection (1), an agreement entered into between an employer and "one who is employed." (emphasis added) We can only read the exclusion as intended for an agreement entered into during the course of the employment relationship.[3] However, we do not agree with Herndon that the covenant is therefore necessarily an unenforceable post-employment restraint of trade and competition.
That the instant covenant not to compete works to restrain competition is not disputed. Facially, it would be void under Section *923 542.33(1).[4] However, this Court has refused to apply 542.33(1) so "mechanically," without considering the circumstances or the reasonableness of the restriction. Pensacola Associates v. Biggs Sporting Goods Company, 353 So.2d 944 (Fla. 1st DCA 1978), cert. denied, 364 So.2d 881 (Fla. 1978). Notwithstanding the broad-brushed effect of 542.33(1), this Court is willing to subject the restraint imposed by the settlement agreement to a "reasonable standard test," a view which nonetheless comports with the common law philosophy of the statute.[5]
The instant covenant not to compete was ancillary to a valid settlement agreement and provided valuable consideration in return for Eli Witt's voluntarily dismissing its complaint. Herndon doubtless desired to avoid a lengthy litigation; Eli Witt obviously desired that its business security be protected from one who at liberty could do the company immediate harm should he disclose confidential corporate clients, information and trade secrets. Just as the Massachusetts Supreme Court in the remarkably similar case of Novelty Bias Binding Company v. Shevrin,[6] concluded, we hold, under the circumstances disclosed, considerations of public policy, equity and fair dealing favor enforcement of the covenant if it is otherwise reasonable.
Whether the restraint is reasonable as to time and area under the circumstances of the case is a question of fact. Pensacola Associates, at 948; Damsey v. Mankowitz, 339 So.2d 282 (Fla.3d DCA 1976), cert. denied, 345 So.2d 421 (Fla. 1977). Under the circumstances of this case, the restriction is prima facie reasonable and the temporary injunction is not without sufficient basis.[7] The injunction being temporary in character is subject upon final hearing to dissolution or continuance as the facts developed indicate or require. Fountain v. Hudson Cush-N-Foam Corp., 122 So.2d 232 (Fla.3d DCA 1960).
Accordingly, the trial court's order denying Herndon's motion to dissolve the temporary restraining order is hereby affirmed.
MILLS and ERVIN, JJ., concur.
NOTES
[1] We have jurisdiction to review this order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B).
[2] Section 542.33 states in pertinent part:

(1) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by subsections (2) and (3) hereof, is to that extent void.
(2)(a) ... one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area ... Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction.
[3] There is no question that Section 542.33 (recently renumbered from 542.12) is in derogation of the common law, which strongly disfavored covenants not to compete. Coffey, Noncompete Agreements By The Former Employee: A Florida Law and Analysis, 8 Fla.St.U.L. Rev. 727, 728-729 (1980). For that reason, it must be strictly construed. State v. Egan, 287 So.2d 1, at 6 (Fla. 1973).
[4] We do not hesitate to deem the settlement agreement as one falling within the ambit of Section 542.33(1). The statute, embodying the common law policy against contracts containing covenants not to compete, has been accorded a broad sweep of prohibitory application. See Flammer v. Patton, 245 So.2d 854 (Fla. 1971), in which the supreme court invalidated a pension plan having noncompetition provisions.
[5] At common law, despite the animosity accorded such covenants, restrictive agreements were sustained if they were (1) ancillary to a valid contract; (2) necessary to protect the covenantee's enjoyment of the contract benefits, and (3) not primarily intended to restrain competition. Pensacola Associates at 946, n. 2.
[6] 175 N.E.2d 374, 376 (Mass. 1961). In Shevrin, the court affirmed a permanent injunction against an employee accused of converting the employer's trade secrets, thereby enforcing a restrictive covenant in a restitution agreement which prohibited the employee's competing with the employer in 26 states for 3 years.
[7] Paragraph 11 of Eli Witt's amended complaint alleges that "Plaintiff will be irreparably harmed and without an adequate remedy at law ..." Such an allegation is sufficient to justify the order. Summerlin v. Lamar Advertising of Pensacola, Inc., 419 So.2d 781 (Fla. 1st DCA 1982); Puga v. Suave Shoe Corp., 374 So.2d 552 (Fla. 3d DCA 1979). The grant of a temporary injunction is a matter within the discretion of the trial court. Id., Summerlin.