GENERAL BRONZE CORPORATION, Appellant, vs. SCHMELING and others, Respondents: BADGER WIRE & IRON WORKS, Proposed Interpleaded Defendant and Respondent.

*September 12—December 5, 1933.*

154

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Victor D. Werner* of counsel, all of Milwaukee, and oral argument by *Mr. Werner.*

For the respondents there was a brief by *Paul, Ebert, Paul & Gobel* of Milwaukee, and oral argument by *Harold H. Paul.*

*John Sander* of Milwaukee, for the proposed interpleaded respondent.

The following opinions were filed October 10, 1933:

WICKHEM, J. The sole question in this case is whether the agreement between the defendants and the Badger Wire & Iron Works constitutes them employees, or whether they are in fact operating, conducting, or promoting as principals and enterprisers a competitor to plaintiff. It is the contention of the plaintiff that they are in fact promoting, as principals, competition against the plaintiff in violation of the contract and injunction; that in fact they have invested property in the Badger Wire & Iron Works, and own an interest in it, and that they are not *bona fide* employees.

While the matter is not free from difficulty, it is our conclusion that the trial court's disposition was correct. The injunction required, rather than forbade, the dissolution of the Wisconsin Company, and the disposition of its assets by sale was a necessary and usual incident of the dissolution. The sale did not constitute an investment in the Badger Company in any forbidden sense, even though credit was given for the purchase price, for that transaction, unless colorable, created merely a relation of creditor and debtor between defendants and the Badger Company. It appears that the physical assets were sold for no more than their worth as such, and no attempt was made to include in the sale the good will of the Wisconsin Company.

The hiring of the defendants by the Badger Company was not a violation of the injunction unless it was intended as a mere cloak for other and different relations, or unless the agreement to pay as a part of the compensation for services a portion of the net profits of the Badger Company, as a matter of law made defendants something other than employees. This court can take notice of the fact that payment of portions of the net profits of a business as added compensation or as a bonus is not regarded by the business world generally as inconsistent with a relationship of employer and employee, and we know of no rule of law, and are cited to no case, holding that this manner of compensating employees raises the latter to the status of enterprisers. It is true that all of the defendants were taken over by the Badger Company, and that they assumed important and responsible duties with that company. These duties, however, were substantially the same which defendants had previously discharged for the Wisconsin Ornamental Iron & Bronze Company, and which they were expressly authorized to undertake for a rival concern. Nor do we think that the exploitation to the trade of the fact of their employment was a violation of the injunction. Certainly there was no express prohibition against a future employer getting whatever advertising and advantage he could out of the standing of defendants, or any of them, with the trade, and we see no justification for implying any, or any merit in the contention that the former decision restricted defendants not merely to a status as employees, but employees who would become silent and submerged cogs in the machine of a future employer. The contract specifies that defendants may become employees of a competitor, and they may act with impunity as long as they preserve this status.

Reliance is had by plaintiff upon certain statements in the decision of this court upon a former appeal. There it was defendants' contention that the agreement was unrea-

sonable and void in that it was so phrased as to be of no value in protecting plaintiff's good will, and a mere source of annoyance to defendants. This contention was based upon the fact that the contract permitted defendants to be employed by competitors and thus to use their capacities and abilities to the detriment of plaintiff. The court sustained plaintiff's contention that the restriction of the defendants' activities was of value in protecting plaintiff's good will, and took notice of the fact that the urge to compete ruthlessly and effectively is generally accelerated by ownership of a business and a consequent right to a share in its profits. The court has no desire to recede from this position, but it does not result in the conclusion that a form of employment which in some degree approaches ownership in incentive is forbidden, when the contract expressly authorizes any form of employment. It will thus be seen that no single act of defendants can be said to be inconsistent (1) with a *bona fide* sale of assets to the Badger Company, and (2) with a *bona fide* employment outside the prohibition of the contract and injunction.

It remains to be considered whether the conduct of the defendants and their dealings with the Badger Company, taken as a whole, indicate that defendants have used the cloak of an apparent or colorable sale and employment to accomplish an evasion of their contractual duties. Upon the former appeal it was held that the fact that defendants had so organized as to enable them to become employees of the corporation of which they were the organizers and principal stockholders, did not prevent a court from disregarding the corporate veil and treating the defendants as principals in a competing business. It is here claimed that some such principle should be applied with the same result. We fail to see how this can be done. The Badger Company has been a going concern since 1916, and a competitor of the General Bronze Company during that time, although concededly it was not an important competitor in the field

of ornamental bronze, and had not the equipment presently to become one. It was not an entity created by the defendants as a cloak for their activities. If in fact its transactions with the defendants were not colorable, we fail to see how they can be disturbed. There is literally no evidence that they are sham or colorable unless it be considered that, taken together, they indicate a general purpose on defendants' part to evade their duties under the contract, but there is no showing that would warrant this court in so concluding. The fact that defendants insisted upon an arrangement that went to the limits of their contractual rights is certainly not enough to support such a conclusion. Their obligation went no further than the discharge of these duties. It certainly is not shown that there was a secret understanding that the note was to be regarded by the parties as equivalent in rights to a sale of stock, or that the defendants, while nominally employees, were to have secretly accorded to them rights as stockholders. In other words, there is no ground for upsetting the conclusion of the trial court that the transactions were *bona fide* as contrasted with colorable, and we cannot consider the desire of the defendants to have the full measure of their contractual rights as a material fact.

Probably the strongest contention that may be made on behalf of the plaintiff is that the Badger Company was not an important competitor in bronze, and that its activity therein was promoted by defendants. There is evidence in the record, however, from which the trial court had a right to conclude that the Badger Company, for some time prior to the contracts in question, had contemplated the expansion of their business so that they might become equipped to cover the whole field of ornamental metal, and thus be able to fabricate, rather than sublet, such contracts as they obtained for large pieces of ornamental bronze. There is further evidence that these negotiations were initiated by the Badger Company with a view to acquiring both the equip-

ment of the Wisconsin Company and the services of the defendants. This, taken together with the fact that the Badger Company had for years been a competitor of the General Bronze Company, seem to us to warrant the trial court's conclusion that defendants had not promoted a new competitor of plaintiff. In view of this determination it is unnecessary to consider further the relation of the Badger Company to this litigation.

One feature of this case apparently was overlooked by the trial court. So far as the record shows, the defendants were in contempt for conducting business as the Wisconsin Company, in violation of the injunction, between the period when the injunction went into force and effect and the dissolution of the Wisconsin Company. This branch of the controversy appears not to have been considered in the lower court, and it seems to be assumed that plaintiff's damages for these activities were all that were involved. In form, at least, the order appears to have closed the matter. We think the question of whether or not the defendants were in contempt for failure to obey the injunction is one which should not escape consideration by the trial court, since it involves something more than the mere interest of the parties in the subject matter of the litigation. From this it follows that in so far as the order completely exonerates defendants from contempt, it should be sufficiently modified to permit the court to pass upon this question, and that in all other respects the order should be affirmed.

*By the Court.*—The order of the circuit court is modified, as indicated in the opinion, and as so modified is affirmed, and cause remanded for further proceedings according to law.

FOWLER, J. (*dissenting*). The facts are sufficiently stated in the opinion of the court. The proceeding is to punish

for contempt for violating an injunctional judgment and to restrain further violations of it. ' The terms of the injunctional judgment were violated by the defendants, by taking orders and working upon them between the time of the entry of the judgment and the sale to the Badger Company. This is conceded by the trial judge, and necessarily requires a judgment of guilty of contempt and the imposition of costs against the defendants, even if it does not require, as I think it does, the imposition of a fine. *State ex rel. Fowler v. Circuit Court,* 98 Wis. 143, 73 N. W. 788. The assignment of these orders and the completion of them by the Badger Company was also a violation of the injunctional judgment, not only by the individual defendants but by the Badger Company, and this also merits, and in my opinion requires, a judgment of guilty of contempt and the imposition of a fine and costs against the Badger Company.

The order of the trial court appealed from is that the "proceedings be dismissed as to the Badger Company and that this company recover their costs." It also provides that the matter of costs as between the plaintiff and the individual defendants "be held open pending the determination of this (the trial) court on the question of damages." Both these provisions are, in my opinion, erroneous. The plaintiff is entitled to costs, and also to have a fine imposed, against all the defendants, independent of the inquiry as to damages by reason of the violation of the injunctional judgment. It is not apparent how the plaintiff can prove any actual damages by reason of the violations complained of. Presumably it will not be able to prove that it would have procured the orders filled by the defendants had the defendants not procured and filled them. If the plaintiff cannot make this proof and for this reason does not elect to have its damages assessed within the period fixed by the order, the Badger Company will go "scot free" and the individual defendants

presumably or at least possibly will. The one is and the other would be, in my opinion, a perversion of justice and prejudicial error.

I am also of opinion that the matters complained of by the plaintiff constitute a violation of the contract between the plaintiff and the individual defendants. If the defendants are permitted to continue business in competition with the plaintiff they will be doing precisely what was permanently enjoined by the original judgment. The Badger Company was no competitor of the plaintiff before it took over the assets of the Wisconsin Art Bronze Company and the services of the three individual defendants. The individual defendants could not, by proceeding in combination as individuals, or by forming a new corporation, have done what they are doing. They actually created a competitor as effectively as they could have done by forming a new corporation or forming a partnership. They should not be permitted to do indirectly what they could not do directly. The three individual defendants have concocted a scheme whereby, by combining their individual efforts and talents, they are able to enter directly into competition with the plaintiff. Together they have all the skill, talent, special knowledge, and particular business experience to make a previously noncompetitive concern an actual competitor of the plaintiff. As to the ornamental bronze business done by the Badger Company, they are the company and the whole of it. The fundamental purpose of the original contract was to prevent such competition by the individual defendants as they jointly created and are jointly carrying on. While that contract permitted them individually to enter the service of competitors it did not expressly or by intendment permit them to combine to do so, and by their combined efforts create a new and active and formidable competitor. That each of several individuals has the independent and separate right to do a thing, does not warrant their combining to do it or

render their combined acts lawful, although if each were acting independently his individual acts would be. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W. 1046. In the *Huegin Case* individuals conspired to do separately and individually what each one might have lawfully done had he not acted pursuant to agreement with the others. Much less may the defendants agree to do jointly to the injury of plaintiff what each one might have done individually without injury to it.

It is stated in the original opinion that the Wisconsin Art Bronze & Iron Company did not transfer its good will to the Badger Company. It did not do so in express terms, but it did do so in fact. By the transfer of the unfinished orders, by the taking over of the individual defendants who created and in themselves embodied whatever of good will the Wisconsin Art Bronze & Iron Company possessed, and by advertising the taking over of the individual defendants, the Badger Company acquired and reaped the full benefit of all of the "good will" of the Wisconsin Art Bronze & Iron Company. To say that that good will was not assigned in express terms is to substitute shadow for substance.

To permit the defendants to proceed in competition with the plaintiff is to render absolutely nugatory the original judgment, to frustrate the court in its effort to protect the plaintiff's rights, and to flout and hold in utter contempt the judgments of the circuit court and of this court. For the reasons stated the order of the circuit court should in my opinion be reversed with directions to enter an injunctional order as prayed.

I am authorized to state that Mr. Justice OWEN concurs in this opinion.

A motion for a rehearing was denied, with $25 costs, on December 5, 1933.