**E. H. WILSON v. JOHN D. PIGUE, also known as J. D. PIGUE, and JOHN D. PIAGUE.**

10 So. (2nd) 561                                          En Banc
November 10, 1942          Rehearing Denied December 16, 1942

Frank D. Upchurch and Willard Howatt, for appellant;

Dowda and Millican, for appellee.

CHAPMAN, J.:

On October 30, 1939, John D. Pigue, for a consideration of $900.00, sold to E. H. Wilson his well drilling equipment and the business of drilling wells in St.

Johns County, Florida, and covenanted not to engage in the well drilling business in St. Johns County, Florida, during the ten year period after October 30, 1939. The sales agreement, in part, provided:

"Also all the rights and interest of the said J. D. Piague, his heirs, executors or administrator in the business of drilling wells in St. Johns County, Florida, for the full term and period of ten years from the date of the making and executing of this Bill of Sale. It is understood that neither the said J. D. Piague, his heirs, assigns, executors or administrator, will engage in the business of drilling wells in St. Johns County, Florida, during this ten year period."

In a suit to restrain Pigue from the violation of the aforesaid restrictive covenant, it was alleged that Pigue, in November, 1940, engaged in the well drilling business in St. Johns County, and was then engaged in drilling a well for one Gordon Middleton and threatens to continue to engage in the said business in contravention of his restrictive covenant. That the plaintiff had engaged for many years in drilling wells and by the re-entry of Pigue into the business will result in irreparable loss and injury if not restrained. The defendant Pigue admitted by answer the several allegations of the bill of complaint and represented that while he had worked for Mr. Middleton, another well driller, as a common laborer, he had not violated the aforesaid covenants. Testimony was heard by the chancellor, who decided the equities of the cause in behalf of the defendant Pigue, and the plaintiff below perfected his appeal therefrom to this Court.

Counsel for appellant poses for adjudication by this Court as the controlling factor presented on the record, the question viz.: Does the seller of well drill-

ing equipment and "the business of drilling wells" violate his covenant not to engage in "the business of drilling wells in St. Johns County, Florida" by becoming an employee of another well driller, and as such soliciting well drilling business and superintending the drilling of wells in said county?

The case of Stewart & Bro. v. Stearns & Culver Lbr. Co., 56 Fla. 570, 48 So. 19, 24 L.R.A. (N.S.) 649, involved an alleged breach of a contract. The Lumber Company operated a saw mill and employed a great number of persons and leased its store building to Stewart Bros. for a period of three years and they agreed to carry a general stock of merchandise of a value of not less than $10,000.00, and the Lumber Company agreed not to engage in the mercantile business at this point for three years and agreed to use its influence to induce its employees to trade with Stewart Bros. Stewart Bros. sued the Lumber Company, alleging a breach of the contract, in that it failed to influence its employees to patronize plaintiffs' business. A demurrer was sustained to each count of the declaration and on appeal here was affirmed on the theory that the contract was violative of the public policy of the State in that it tended to create a monopoly. The Court, in part, said:

"Where a contract in its terms and in its operation transfers from one party to another a lawful business, trade or occupation actually engaged in, or a lawful exclusive right, and as an incident thereto it is agreed that the vendor will not for a reasonable time engage in the same or a similar business within a reasonable territory covered by the business, and such agreement does not unreasonably restrict the available supply of, or access to or raise the price of any

useful commodity, or tend to create a monopoly, it may not be against public policy or unlawful, and consequently may be enforced by the courts if otherwise legal and binding."

The case of Massari v. Salciccia, 102 Fla. 847, 136 So. 522, involved a partnership engaged in the sale of groceries in the City of Tampa. One party bought the interest of the other and the partnership was dissolved and C. Salciccia covenanted not to go into the grocery business in the City of Tampa for a period of two years. Suit was brought to restrain Saliccia from engaging in the grocery business at 1402 Highland Avenue of the City of Tampa. The chancellor sustained a general demurrer to the bill of complaint for the want of equity, but the order was reversed on appeal to this Court. For cases involving similar contracts see Ericson v. Jayette, 149 Fla. 82, 5 So. (2nd) 453; Lee v. Clearwater Growers' Ass'n., 93 Fla. 214, 111 So. 722; Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32; Nettles v. City Ice & Fuel Co., 118 Fla. 345, 160 So. 42; Simms v. Burnette, 55 Fla. 702, 46 So. 90, 16 L.R.A. (N.S.) 389, 127 Am. St. Rep. 201, 15 Am. Cas. 690.

Counsel for appellant contend that Mr. Pigue violated the restrictive covenant of his agreement by engaging in the well drilling business by drilling a well for Gordon Middleton. Mr. Pigue testified that he worked for wages paid him by another well driller and did not have an agreement with Gordon Middleton for the drilling of the well. We do not have the benefit of Mr. Middleton's testimony on this point. It is next contended that Mr. Pigue solicited the drilling of a well in St. Johns County on a given date and this violated the restrictive covenant. Mr. Pigue testified

that he submitted figures prepared by a well. driller for whom he was employed. The appellee here is bound by the terms of his covenant and on a proper showing will be restrained. While it is true that restrictive covenants of contracts which prevent persons from obtaining employment and from earning a living are in restraint of trade and against public policy, this rule should not be used or employed as a subterfuge to circumvent the restrictive covenant as to time and space and reasonableness in its operation. See 17 C. J., p. 623, par. 238.

In a business having an established clientele, the system and method of operation is of considerable importance. The knowledge and information acquired by a person in the ownership or management thereof are quite valuable and it is reasonable to assume that the disclosure of the system or method of operation to a competitor would be injurious. When a person covenants to remain out of a certain business for time and space and accepts employment in a rival concern, the test appears to be that the injury begins when the scope and character of the employment by the rival business is such as to result in substantial interference with the business being the subject of the contract. The seller must refrain from acts which may operate to induce the customers of the old business to transfer their patronage to new employment. The purchaser of the good will of a business and its goods is entitled not only to the protection of customers and patrons, but to enter the field of competition unhampered by the adverse influence of the seller. See General Bronze Corp. v. Schmeling; 213 Wis. 150, 250 N.W. 412, 93 A.L.R. 114, and annotation pages 121 et seq.

Applying these principles to the pleadings and evidence in this case, our conclusion is that the decree appealed from should be and the same is hereby reversed.

It is so ordered.

BROWN, C. J., TERRELL, BUFORD, THOMAS and Adams, JJ., concur.

WHITFIELD, J., dissents.