101 So.2d 123 (1958)
WEST SHORE RESTAURANT CORP., a Florida Corporation, Appellant,
v.
Irving TURK, Phil Turk, Joe Lefft and Alva Bartke, Appellees.
Supreme Court of Florida.
March 5, 1958.
*124 S.E. Simmons, of Bussey & Simmons, St. Petersburg, for appellant.
Matt O'Brien, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
O'CONNELL, Justice.
West Shore Restaurant Corp., appellant, was plaintiff in the court below in a suit charging the defendant, Irving Turk, with violation of a restrictive covenant. The other defendants, Phil Turk, Joe Lefft and Alva Bartke, were charged with aiding and assisting Irving Turk in avoiding the effect of the restrictive covenant, each being fully aware of its existence and terms.
The complaint alleges that on May 30, 1955, plaintiff purchased for $400,000 a valuable restaurant known as "Wolfies", located at 3200 Central Avenue in St. Petersburg, Florida; that said restaurant was owned by a Florida corporation and under the active management of the defendant, Irving Turk; that simultaneously and as part of the consideration for the purchase price, the stockholders of the vendor corporation, including defendant Irving Turk, executed and delivered to the plaintiff a restrictive covenant which in part provided that none of the stockholders of the seller corporation would become engaged directly or indirectly, as principal or as agent, as employer or as employee, as officer, director or stockholder of a corporation, as partner, dormant, special or otherwise, or as licensee in a business involving the retail sale of food for consumption on the premises or for the retail sale of bakery products for consumption on or off the premises; and that such covenant, insofar as defendant Irving Turk is concerned, covers a period of five years and an area whose radius is seven miles from "Wolfies" at 3200 Central Avenue, St. Petersburg.
The complaint further alleges that on or about September 30, 1955, the defendant, Phil Turk, who is the father of defendant, Irving Turk, and the defendant Joe Lefft pretended to purchase from the defendant Alva Bartke and her husband two restaurants known as "Bartke's", one located at the International Airport in Tampa and the other at the Tropic Terrace Apartment Hotel, 11730 Gulf Boulevard on Treasure Island in Pinellas County, the latter being within a radius of seven miles of 3200 Central Avenue, St. Petersburg. The complaint avers that the plaintiff is unacquainted with the precise form under which this transaction was conducted, but avers that defendants Irving Turk and Joe Lefft were the actual purchasers and are now the true owners, that the restaurants are jointly owned and managed by the defendants, and that the entire arrangement is a mere subterfuge designed by all of the defendants to evade the effect of the restrictive covenants. In addition, the complaint avers that, at the time such complaint was made, defendants Joe Lefft and Irving Turk were negotiating to buy a third restaurant, known as "Ciro's" (subsequently know as "The *125 Rainbow Room") located at 10803 Gulf Boulevard, Treasure Island; that the purchase was to be in the names of Lefft and Phil Turk, again being a cloak to conceal the idenity of the true purchasers, Lefft and Irving Turk; and that said restaurant is within the seven mile radius of 3200 Central Avenue in St. Petersburg.
In the complaint each of the defendants is charged with actual notice and knowledge of the terms and existence of the restrictive covenant; each is accused of deliberately having the purpose and design of aiding and assisting the defendant Irving Turk to avoid the effect of said covenant; and defendant Alva Bartke is further charged with conspiring with the other defendants in a scheme to avoid forfeiture of the nonassignable lease of the premises at the Tropic Terrace Hotel, the defendants pretending to retain her as operator of the restaurant there operated, whereas in truth she had no interest in the business except such as might exist by virtue of any unpaid portion of the purchase price due her and her husband in connection with the sale of such restaurant.
The complaint then prays that defendant Irving Turk be enjoined from engaging directly or indirectly in any business involving the retail sale of food for consumption on the premises at either of the two mentioned locations or anywhere else within the described radius within the five year period. Also, the complaint prays that the other defendants be similarly enjoined from engaging in business with Irving Turk and that, if necessary, they all be required to divest themselves of ownership of any beneficial interest in the two restaurants.
The court considered and denied motions by the defendants to dismiss and to strike portions of the complaint. Defendants then filed answers to the complaint.
The answers deny that Irving Turk has any beneficial interest in the two restaurants purchased from the Bartkes, allege that Phil Turk and Lefft are the actual purchasers, and claim that Irving Turk is merely an employee of the corporation known as Bartke, Inc., being such corporation's manager of the restaurant located at Tampa International Airport and supervisor of a commissary there located. Knowledge, on the part of the defendants Phil Turk and Joe Lefft, of the existence of the restrictive covenant affecting Irving Turk is admitted, but it is denied that Irving Turk's connection with the business constitutes a violation thereof, especially at Ciro's ("The Rainbow Room") which is alleged to be owned by a separate corporation known as Bartke's Treasure Island, Inc., and which is alleged to have no ties with Irving Turk, directly or indirectly.
In her separate answer, defendant Alva Bartke disclaims knowledge of the facts stated in the complaint except the fatherson relationship between Phil and Irving Turk, the identity of Joe Lefft as one of the purchasers of the two restaurants from her and her husband, the non-assignability of the lease of the restaurant at the Tropic Terrace and her operation of such restaurant.
The case was then at issue and depositions were taken by plaintiff of each defendant and of Frank Bartke, husband of defendant Alva Bartke; of Harry King, manager of the restaurant at the Tropic Terrace; of Melvin Berger, a wholesale food distributor; and of Peter Cook, office manager of Bartke's Inc.
Each party then moved for summary decree, defendants supporting their motion with affidavits. After hearing thereon, the chancellor entered his order denying plaintiff's motion for summary decree but granting defendants', dismissing the cause. In his final decree, the chancellor recited that the parties had stipulated in open court that both the Tropic Terrace Restaurant and the Rainbow Room (formerly called "Ciro's") were within a radius of seven miles from 3200 Central Avenue, St. Petersburg; that the lease, held by defendant *126 Alva Bartke, of the Tropic Terrace Restaurant had been cancelled and none of the defendants were then carrying on business at that site, and that therefore the complaint be dismissed as to defendant Alva Bartke.
Defendants contend that the chancellor properly exercised his discretion in entering summary judgment for defendants and dismissing the cause. They argue that such discretion is specifically given him in Sec. 542.12(2), F.S.A., which pertains to restrictive covenants of the type here involved. It is true that the general rule is that the exercise of the chancellor's discretion will not be disturbed on appeal unless it affirmatively appears that his action constituted an abuse thereof.
However, in this case the chancellor did not hear witnesses. He acted on the same pleadings, affidavits, and depositions which make up the record now before us. Much of the evidence was taken from the defendants themselves and was not disputed, leaving to the chancellor only the task of interpreting the probative force and legal effect of what was before him. In such a case the presumption of correctness of the rulings of the chancellor are not as strong as where the evidence is conflicting or where the chancellor heard the witnesses himself. Harmon v. Harmon, Fla. 1949, 40 So.2d 209, 212; Holland v. Gross, Fla. 1956, 89 So.2d 255, 258.
The presumption of correctness due the ruling of a chancellor based on a written record, where his effort has been directed to determining the probative force and legal effect of the written record, is slight for the reason that we have everything before us that he had before him and we have the same opportunity to weigh it as did the chancellor.
Nor can we agree with defendants that the plaintiff is estopped to complain of the summary decree against it since it also had moved for summary decree. To follow this reasoning would mean that one who made such a motion would be precluded from contesting the correctness of any adverse order entered against him as a result thereof. Defendants rely for this point on the case of Rigel v. National Casualty Co., Fla. 1954, 76 So.2d 285, but we do not find that case to be factually similar. It is not controlling. The decisions of this Court in Shaffran v. Holness, Fla. 1957, 93 So.2d 94, and Macina v. Magurno, Fla., 100 So.2d 369, are in point and determine the point contrary to defendants' contention.
We proceed then for determination of the questions of (1) whether or not there was in fact no genuine issue of material fact remaining to be decided so as to entitle defendants to a summary final decree as a matter of law, or (2) whether plaintiff was entitled to such a decree.
Defendants do not contend that the restrictive covenant sought to be enforced is void as being unreasonable in any way. Consequently, we are concerned only with whether or not the covenant was being breached, and whether defendants should be enjoined from breaching it.
As we view the record, the plaintiff contends that the covenant not to compete has been and is being breached in either one or both of two ways, to-wit: (1) by Irving Turk's employment by Bartke's, Inc. when that corporation owned and operated Tropic Terrace Restaurant, and now by his employment by the same corporation because of the services and influence which he renders to and exerts over the Rainbow Room restaurant through the operation of a common commissary office, accounting system, bank account, etc., which activities are run or supervised by Irving Turk, and/or (2) by Irving Turk's actually owning an interest in Bartke's, Inc., owner of the airport restaurant, and in Bartke's Treasure Island, Inc., the owner of the Rainbow Room restaurant, the latter restaurant being within the restricted area.
*127 A reading of the record before us, particularly the depositions, leaves no doubt that the covenant was breached by Irving Turk during the time that Bartke's, Inc., the admitted employer of Irving Turk, owned and operated both the airport restaurant and the Tropic Terrace restaurant. The defendants admit that Irving supervised the operation of the commissary which supplied Tropic Terrace with a major portion of its supplies and performed other services which benefitted its operation. The Tropic Terrace restaurant was admittedly within the restricted area. While this operation has ceased, and is therefore not subject to injunction, nevertheless, it is important in that it is a part of a picture revealed by the record.
From the record we see the following picture.
Irving Turk sold out his holdings in Wolfies. The purchaser, plaintiff, insisted on his executing the restrictive covenant not to engage in competing business, either directly or indirectly, within a prescribed time and area. Shortly after the sale, Irving and/or Phil Turk, and/or Joe Lefft, began negotiations with the Bartkes. Irving was very active in such negotiations, playing the dominant role. As a result, a deal was consummated with the Bartkes whereby Lefft and Phil Turk became the new owners of the two restaurants then being run by the Bartkes. One of these restaurants was within the prohibited area and the other was at the International Airport in Tampa, beyond the prohibited area. Lefft was an old friend and former associate of Irving Turk. Irving loaned a large sum of money to his father, Phil Turk, a retired businessman, for the purchase. These two restaurants were owned and operated by a corporation, Bartke's, Inc., stock of which was held equally by Phil Turk and Joe Lefft. Alva Bartke was in some way involved with the running of the one in the prohibited area at the Tropic Terrace, but as the lease has now expired at such location she has been dismissed as a party defendant. Phil Turk was made president of the corporation and does appear at the office of the corporation from time to time, but not at any regulated periods or hours. Irving Turk was hired as manager of the restaurant at the Tampa airport.
Phil Turk and Lefft next purchased another restaurant, Ciro's, now called the Rainbow Room, also in the prohibited area. A separate corporation, Bartke's Treasure Island, Inc., was organized by them to run that restaurant and Irving Turk is not an employee of that corporation. Phil Turk and Joe Lefft hold an equal stock interest therein.
In addition to managing the Tampa airport restaurant, Irving Turk also runs or supervises the running of a commissary near the airport restaurant. From this commissary the Tropic Terrace restaurant, while owned by Bartke's, Inc., obtained most of its necessary foodstuffs and some other supplies, as the Rainbow Room now does. Both the corporation running the airport cafe and the corporation running the Rainbow Room have their offices at this commissary and Irving Turk spends several hours each day in the office of the commissary. From this central office bills are sent out to credit customers of the airport and of the Rainbow Room restaurants. A joint courtesy card system is used between the two restaurants. It appears that in that office a central bookkeeping system is in effect. Monies taken in at both the Rainbow Room and the airport restaurant, at least in part, end up in the same bank account in Tampa.
Phil Turk does not receive a salary from either corporation, although he is president of one. Irving Turk, an employee of one of them, receives as much salary as does Lefft, co-owner of such corporation with Phil Turk.
The restrictive covenant precludes Irving Turk from competing, "directly or indirectly, as principal or as agent, as employer or as employee". It is our conclusion *128 that undisputed facts show that as employee of the one corporation Irving Turk exerts a definite influence on the other; the latter one operates a restaurant within the prohibited area. This influence is continually exerted through Irving's presence and participation in the central office and commissary of the two corporations.
We find further evidence of Irving Turk's violation in that he has been obviously in a position of directorship from the beginning, in that he played a dominating role in the very formation of the competing business, even putting up part of the capital, although ostensibly as a loan to his father. This guise as an employee of a corporation doing business only beyond the prohibited area is a mere cloak of concealment in view of the close interrelation of the three persons, Irving Turk, Phil Turk and Joe Lefft, and of the alter egos of the latter two, the two corporations. The corporation of which Irving Turk is an employee, Bartke's, Inc., while now only operating a restaurant in an area not prohibited by the covenant, did operate one in the prohibited area when Phil Turk and Joe Lefft first organized it. We find that Irving Turk violated his covenant through exerting his influence in connection with the corporation at that time and still violates it by his employment therein in view of the close relation of that corporation to the one running a restaurant in the prohibited area as evidenced by his position in the commissary and the central office of the two corporations.
We do not rule that merely because Irving Turk worked for a corporation which ran two restaurants, one of which was within the prohibited area and the other, in which he worked as manager, was beyond the prohibited area, he was guilty of violating the restrictive covenant, although this fact in itself might be sufficient. We find something in addition  evidence that he was and is exerting a direct influence on the management and operation of the restaurant within the prohibited area. The record reveals that Irving seldom went on the premises of the restaurants in the prohibited area, but this is not conclusive. The services which he rendered were nevertheless a factor in the operation of the business in the prohibited area and did or were likely to influence and aid the operation of those businesses in violation of his agreement not to compete in any way with the plaintiff. Thus, we find that Irving Turk has breached his contract.
In the instant case, the agreement executed by the parties specifically forbade Irving Turk from becoming an employee of a competing business. This Court, in Wilson v. Pigue, 1942, 151 Fla. 734, 10 So.2d 561, 563, found that where one had covenanted not to engage in competitive business, he breached such covenant by becoming the employee of one in such competitive business. What we said there is applicable here also:
"* * * The purchaser of the good will of a business and its goods is entitled not only to the protection of customers and patrons, but to enter the field of competition unhampered by the adverse influence of the seller. * * *"
The Supreme Court of the State of Washington, in Madison v. La Sene, 1954, 44 Wash.2d 546, 268 P.2d 1006, 44 A.L.R.2d 1145, enjoined a son, who was not a party to the restrictive covenant, from engaging with his father, party to the covenant, in a competing business prohibited by the covenant. The father sold his upholstery business and covenanted with the purchaser not to engage in such business within a specified territory. The purchaser moved the location of the business and the seller's son opened a similar business at the old location. The son was unskilled in the upholstery business and the father participated in the business to some extent. The court found that the son conspired with the father to break the restrictive covenant and the new business was in reality owned by the father.
*129 Phil Turk, in the case before us, was relatively inexperienced in the restaurant business. While the evidences of the breach in Madison v. La Sene, supra, were somewhat greater than in the instant case, there is some parallel between the two and we are of the view that in the instant case the defendants Phil Turk and Joe Lefft should be enjoined from aiding and abetting Irving Turk in violating his covenant. The same court, in the later case of LeMaine v. Seals, 1955, 47 Wash.2d 259, 287 P.2d 305, stated that the rule that a stranger to a covenant may be enjoined from aiding and assisting the covenanter in violating his covenant is supported by an overwhelming weight of authority. See 43 C.J.S. Injunctions § 84, p. 569; 28 Am. Jur. Injunctions, § 104, p. 298; Annotation, 94 A.L.R. 341, 345 (1934), which sustain this pronuncement of the rule. In the instant case, however, Irving Turk's codefendants do not contend that they should not be adjudged guilty of aiding and assisting the defendant Irving Turk in avoiding the effect of the restrictive covenant if he be found guilty of so avoiding the covenant.
We therefore find that the trial court erred in awarding the defendants a summary decree and for that error the decree must of course be reversed. We further conclude that from the record before the chancellor there were sufficient material facts, undisputed, to warrant his holding that as a matter of law the plaintiff was entitled to a summary decree holding that the participation by Irving Turk in the operation of the commissary, joint office and all other common activities of the two corporations which own the airport restaurant and the Rainbow Room restaurant, and any other actions or activities by him which in anywise affect the operation of the Rainbow Room restaurant, are in violation of the restrictive covenant, and likewise that his employment by Bartke's, Inc. while that corporation owned Tropic Terrace restaurant was a violation of said covenant. Upon the going down of the mandate of this Court, a summary decree for plaintiff should be entered enjoining the defendant Irving Turk from further breaching the covenant as he has done and enjoining the defendants Phil Turk and Joe Lefft from aiding and assisting him in the breach thereof, as they have done.
As to the claim of plaintiff that Irving Turk is in fact the owner of an interest in both Bartke's, Inc. and Bartke's Treasure Island, Inc., although the inferences to be reasonably drawn from the record strongly support plaintiff's claim, there is a genuine issue of material fact which warrants a trial of the question.
Covenants not to compete are in the best of circumstances difficult to enforce. If the covenantor wishes to avoid the agreement the covenantee is required to become a policeman and a detective to catch him. When the covenantee is able to prove a breach he finds it most difficult to prove, with the certainty required by law, the damages which he has suffered. For these reasons there are few types of contracts which require greater attention by the courts in their enforcement, and in so doing the moral obligation of the covenantor, the obligation to observe the spirit as well as the letter of the agreement, must be considered and enforced.
The Supreme Court of Colorado expresses this well in Whittenberg v. Williams, 1943, 110 Colo. 418, 135 P.2d 228, 229, citing an earlier opinion of that court:
"Where one is so lost to a sense of moral obligation as to accept a full consideration for his stock in trade and good-will, upon express condition that he refrain from again entering that business for a limited time, within a certain territory, and then immediately, having pocketed the fruits of the agreement, deliberately and wilfully ignores the controlling condition thereof, courts should certainly not hunt for legal excuse to uphold him in such moral delinquency." Barrows v. McMurtry *130 Mfg. Co., 54 Colo. 432, 449, 131 P. 430, 436.
This cause is reversed for entry of a summary decree in favor of the plaintiff, as above outlined, and for further proceedings in accordance herewith.
TERRELL, C.J., and ROBERTS, DREW and THORNAL, JJ., concur.