167 So.2d 875 (1964)
RINKER MATERIALS CORPORATION OF WEST PALM BEACH, a Florida corporation, Appellant,
v.
HOLLOWAY MATERIALS CORPORATION, a Florida corporation, and Frank L. Williamson, Appellees.
No. 4644.
District Court of Appeal of Florida. Second District.
September 11, 1964.
Rehearing Denied October 20, 1964.
Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, for appellant.
Fred M. Peed, of Gurney, Gurney & Handley, Orlando, for appellees.
ALLEN, Judge.
The plaintiff-appellant, Rinker Materials Corporation, brought this action against the defendant-appellees, Holloway Materials Corporation and Frank L. Williamson, to restrain them from violating a covenant not to compete.
Holloway-Rinker Materials, Inc., a corporation formed by the plaintiff and defendants, had been engaged in the concrete products business in Cocoa, Florida, for two or three years prior to September 12, 1958. The parties found it increasingly difficult to do business together and, on September 12, 1958, entered into an agreement whereby the plaintiff Rinker Materials Corporation was to purchase the stock of Holloway-Rinker Materials, Inc., owned by defendants Holloway Concrete Products Company, Inc. and/or Frank L. Williamson for $45,000, and was also to buy from the defendants a certain note given by Holloway-Rinker Materials, Inc., for $105,000 plus interest. The said Holloway Concrete Products Company, Inc. and Frank L. Williamson agreed not to engage directly or indirectly in the merchandising of any line of merchandise being sold by Holloway-Rinker Materials, Inc. within a radius of 25 miles of the Cocoa plant (the territory north of Route 50 was open territory) for a period of ten years from the date of the agreement. The said Holloway Concrete Products Company, Inc. and Frank L. Williamson further agreed to assist Holloway-Rinker Materials, Inc. in the sale and merchandising of products handled by Holloway-Rinker Materials in the area outlined above and the plaintiff agreed to pay $50,000 over a period not to exceed ten years. Subsequent to September 12, 1958, Holloway-Rinker Materials, Inc. was merged into Rinker Materials Corporation, the plaintiff herein.
On or about May 10, 1963, a little over four and one-half years after the agreement was entered into, the defendants began active solicitation of business in competition with the plaintiff within the restricted area in violation of the agreement. A suit to enjoin this violation and for damages ensued.
*876 After an initial delay the cause came on for hearing on the application for preliminary injunction on August 16, 1963. At this hearing certain evidence, largely portions of depositions theretofore secured, was introduced. No defensive pleadings had been filed prior to this hearing, but an Answer, subsequently amended to include a counter-claim for amounts allegedly due defendants under the terms of the 1958 agreement, was served. At the conclusion of this initial plenary hearing the court announced its intention to deny plaintiff any relief and the parties agreed to permit the court to consider the hearing as a final hearing on the merits. A final decree holding that plaintiff-appellant was not entitled to relief under Fla. Stat. § 542.12, F.S.A., eventuated. It is from this decree that plaintiff brings this appeal.
Fla. Stat. § 542.12, F.S.A., provides that contracts in restraint of trade are void except in certain cases as where a person sells the good will of a business or where any shareholder sells or disposes of all of his stock. In these situations the seller may agree with the buyer to refrain from engaging in a similar business "within a reasonably limited time and area" so long as the buyer continues to carry on a like business. The statute further provides that such "agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction."
The chancellor held that since the "continuation of the restriction beyond four and one-half years would exceed the time necessary for a newcomer to establish a business similar to the one sold," the "purpose of the restrictive covenant, i.e., to protect the good will of the business purchased, had been fulfilled," and since the company sold had only operated for a period of less than three years, the covenant for ten years was not "within a reasonably limited time." He, therefore, denied the injunctive relief asked for by the plaintiff.
The plaintiff on appeal claims the chancellor erred in his construction of Fla. Stat. § 542.12, F.S.A., abused his discretion in denying relief to the plaintiff after having found the equities to be with the plaintiff and committed error by considering the question of "public policy."
The chancellor filed a comprehensive opinion dealing with the facts and conclusions of law. Among other things stated in the Conclusions of Law was the following:
"As between these parties, the plaintiff should prevail. The defendant contracted not to compete within a limited area for ten years. He has received in excess of $20,000.00 under that agreement. If the people of Florida had no interest in this contract, as the Legislature indicates they have, the defendant should be enjoined from selling concrete materials within the area prohibited by his solemn agreement. However, the Court cannot concern itself with only Rinker and Williamson. There are over five million Floridians whose rights are almost as much involved as those of the two principals."
It should be mentioned that the $20,000 excess mentioned by the chancellor was in addition to other considerations involved in the contract for sale. This was paid to the defendants or one of them for aiding the plaintiff under the contract to secure business in the limited territory set forth above. Plaintiff had also paid to the defendants or one of them $105,000 plus interest on a note owed by Holloway-Rinker Materials, Inc., and the sum of $45,000 for shares of stock of Holloway-Rinker Materials, Inc. owned by the defendants or one of them.
The lower court also concluded:
"* * * While here the result would seemingly penalize the plaintiff, the Court feels it unreasonable to enforce a non-competitive provision or a contract for ten years when the business sold has not operated even three years at the time of sale.

*877 "This Court adopts the view as expressed by the annotator in writing on this subject in 45 ALR [2d] at pages 99-102.
"`* * * there is no absolute test rendering the provision as to time in a covenant not to compete ipso facto and automatically either enforceable or unenforceable regardless of whether the duration is limited or unlimited in time.
"`* * *
"`* * * the reasonableness of the duration of a restrictive covenant not to compete depends on the need of the covenantee for protection of the good will of the business or practice transferred to him against competition by the former owner. The object of such protection is the good will of the business, which is primarily characterized by a personal relationship and specifically by the customer contracts which the former owner of the business was abe to develop. Protection against the potential loss of these assets is the true test to be applied in determining the necessary duration of the restraint as far as it is influenced by the principle of reasonableness as to the convenantee. Stated more concretely, the covenantee's need for protection exists so long, but only so long, as the seller's relationship with the customers and suppliers is still such that his re-entry into the business would draw business away from the purchaser. (Emphasis supplied)
"`* * *
"`Since a restrictive covenant aims merely to give the purchaser the advantages flowing from the fact that the business he purchases has good will or, in other words, is an established business, but does not aim to exclude the seller from competition if in competing he is not in a better position than any other person newly entering this particular field of business, the duration of the restriction should not exceed the time it would take such a newcomer to establish a business similar to the one sold.'
"The annotator goes on to suggest that as a starting point the duration of a restrictive covenant should be measured by the length of time the business sold has been in existence. In the instant case, plaintiff and defendants had been operating Holloway-Rinker Materials, Inc. for approximately two to three years prior to September 12, 1958, the date plaintiff bought out defendants' interest in said business. The first breach of defendants' covenant not to compete is alleged to have occurred on or about May 10, 1963, approximately 4 1/2 years after the date of said agreement and almost 5 years have passed from the date of the agreement to the present time.
"Under these circumstances, the Court finds that the purpose of the restrictive covenant, i.e., to protect the good will of the business purchased, has been fulfilled. The Court further finds that continuation of the restriction beyond 4 1/2 years would exceed the time necessary for a newcomer to establish a business similar to the one sold.
"Therefore, the Court holds that plaintiff is not entitled to either a temporary or a permanent injunction enforcing the covenant not to compete."
The evidence taken showed that there were many other persons and corporations engaged in the same business as the parties to this suit in Brevard County at the time of the contract and that such business has increased during the last several years. Williamson testified that his competing with Rinker had no effect with regard to prices.
We do not believe the rule adopted by the chancellor in his opinion, which was enunciated by the annotator and quoted from 45 A.L.R.2d, is a fair or reasonable *878 one under the facts of this particular case. As a matter of fact, the annotator himself states:
"* * * This rule does not have the support of any authority; it rather represents the personal opinion of this annotator, who felt the need for a more or less mechanical guide through the maze of generalities and relative concepts referred to in the cases * * *." [45 A.L.R.2d 101]
In Wilson v. Pigue, 1942, 151 Fla. 734, 10 So.2d 561, our Supreme Court had before it a covenant not to compete which, in area and time, was similar to the one in the instant case. A man who was engaged in the well drilling business in St. Johns County, one John D. Pigue, sold to E.H. Wilson well drilling equipment and the business of drilling wells in St. Johns County, Florida, and covenanted not to engage in the well drilling business in St. Johns County during the ten year period after October 30, 1939. The contract of sale also provided that neither Pigue, his heirs, executor or administrator in the business of drilling wells would engage in such business in St. Johns County during this 10 year period.
An action was brought to restrain Pigue from the violation of the restraining covenant. Testimony was heard by the chancellor who decided in behalf of the defendant and the plaintiff appealed to the Supreme Court. The Court, in its opinion, referred to the case of Stewart & Bro. v. Stearns & Culver Lbr. Co., 56 Fla. 570, 48 So. 19, 26, 24 L.R.A., N.S., 649, where the Court had said:
"Where a contract in its terms and in its operation transfers from one party to another a lawful business, trade, or occupation actually engaged in, or a lawful exclusive right, and, as an incident thereto, it is agreed that the vendor will not for a reasonable time engage in the same or a similar business within a reasonable territory covered by the business, and such agreement does not unreasonably restrict the available supply of, or access to, or raise the price of any useful commodity, or tend to create a monoply, it may not be against public policy or unlawful, and consequently may be enforced by the courts if otherwise legal and binding."
Continuing in its opinion (p. 563 of 10 So.2d) the Court said:
"In a business having an established clientele, the system and method of operation is of considerable importance. The knowledge and information acquired by a person in the ownership or management thereof are quite valuable and it is reasonable to assume that the disclosure of the system or method of operation to a competitor would be injurious. When a person covenants to remain out of a certain business for time and space and accepts employment in a rival concern, the test appears to be that the injury begins when the scope and character of the employment by the rival business is such as to result in substantial interference with the business being the subject of the contract. The seller must refrain from acts which may operate to induce the customers of the old business to transfer their patronage to new employment. The purchaser of the good will of a business and its goods is entitled not only to the protection of customers and patrons, but to enter the field of competition unhampered by the adverse influence of the seller. See General Bronze Corp. v. Schmeling, 213 Wis. 150, 250 N.W. 412, 93 A.L.R. 114, and annotation at pages 121 et seq.
"Applying these principles to the pleadings and evidence in this case, our conclusion is that the decree appealed from should be and the same is hereby reversed."
Standard Newspapers, Inc. v. Woods, Fla. 1959, 110 So.2d 397, was a case where the Florida Supreme Court, in an opinion by Justice Thomas, held that where a newspaper *879 publishing company agreed to sell the newspaper, all equipment, circulation lists, and good will of the paper, and a stockholder, who was director and secretary of the publishing company, received $1,000 from his associates for signing ancillary contract for non-competition and presumably received his share of the purchase price, that there was a sale of good will of the newspaper, and the stockholder could not repudiate his obligation not to compete.
In the Court's opinion it is said:
"By the law are condemned contracts under which persons are restrained from pursuing a lawful profession, trade or business, with two paragraphs of exceptions. One relates to partners and is not involved here. Sec. 542.12 (3), supra. The other appears to exclude from the operation of the law persons in three categories: those who sell the good will of businesses, shareholders who sell all their stock in corporations, and employees or agents. Persons in the first two classes may agree with the buyers to desist from engaging in a similar business for a reasonable time in a reasonable area, while those in the third class, agents and employees, may assume the same obligations and may further agree not to solicit old customers of the former employer. Sec. 542.12(2).
"* * *
"Originally, under the common law, of England, contracts restricting a man's right to follow his calling were considered void as against public policy. This view developed from the requirement that a man could not pursue a trade to which he had not become apprenticed, and that one so committed was subject to penalty if he did not exercise that trade. Consequently an agreement to restrain him from following his trade would result either in his violation of the law or the deprivation of his right to earn a livelihood.
"* * *
"In Arond v. Grossman, Fla., 75 So.2d 593, 595, we said that contracts `not to compete or work for a competitor' were unenforceable in the absence of `some special equity.' We have furnished italics.
"We have referred briefly to the history of such contracts and their fate in the courts because the appellant, in effect, asks us to hold invalid an act that, following the principles announced, generally condemns them with, of course, noteworthy exceptions. We cannot agree that an act is unconstitutional that denounces in the main agreements designed to prevent a person from following his lawful `profession, trade or business' when such agreements in the cases cited and others like them have for so long been rejected by the courts for fundamental reasons.
"Moreover, the appellant's challenge is not impressive for under the exceptions may be done what appellant attempted to accomplish, namely, the preclusion of competition by those from whom it had bought the business including the good will. This seems to have been long recognized as an exception to the general rule, Massari v. Salciccia, 102 Fla. 847, 136 So. 522; Wilson v. Pigue, 151 Fla. 734, 10 So.2d 561, and the appellant in undertaking to operate under it was afforded abundant opportunity to protect itself from the competition of the sellers in a reasonable territory for a reasonable time.
"* * *
"* * * But if we focus on the entire transaction, it is plain that in reality he and his colleagues for a price sold a newspaper and all its assets including the good will. As a part of the deal he and they represented that they would secure the buyer against competition from them. The importance of this assurance was fully realized by appellee, else why did he put the value *880 of $1,000 on his signature and why did he think his associates met his demand. Having, presumably, got his share of the purchase price, and having, surely, received his `bonus' he should not in a court of equity be upheld in his attempt to repudiate his obligation."
Judge Kanner wrote an opinion in the case of Beery v. Plastridge Agency, Inc., Fla.App. 1962, 142 So.2d 332, where the plaintiff in an equity proceeding sought injunctive relief against the defendants as to the asserted violation by the defendants of a restriction against competition contained in two employment contracts. The chancellor below, in denying the motion of the defendants to dismiss, cited as support for this order section 542.12(2), Florida Statutes, F.S.A., and the case of Atlas Travel Service v. Morelly, Fla.App. 1957, 98 So.2d 816.
The appellants in the Beery case pointed out that they did not raise the question of reasonableness of the agreement not to compete but contended essentially that the provision for liquidated damages contained within each employment contract had been designated by the parties as a complete means of assessing damages which might be suffered through prospective breach of the covenant not to compete.
The Court, in its opinion, said:
"The appeal centers on the adequacy of the allegations of the complaint under attack by motion to dismiss. These allegations, when such a motion is made, are admitted to be true. It is not deducible from the complaint that there was the intention to provide defendants with the option of abiding by the restriction not to engage in a competing business or of paying damages for breach, nor does it appear that the assessing of liquidated damages was intended as the exclusive remedy. The chancellor properly entered the appealed order."
Chief Judge Sturgis of the First District Court of Appeal, in Atlas Travel Service v. Morelly, Fla.App. 1957, 98 So.2d 816 spoke for the court in circumstances where a state-wide travel service and automobile rental agency hired the appellee in the case as manager of its Daytona Beach office. Subsequent thereto the parties entered into a written employment agreement where, among other things, Morelly agreed that he would not, for a period of two years after termination of his employment, engage directly or indirectly in any business conducted in the city of Daytona Beach that was competitive with the business in which he was employed. Then within the prohibited two year period appellee became associated with a competing business located in the same block with that of appellant and the appellant sought to enjoin further breach and to enforce the provision of the contract relating to liquidated damages. The lower court denied injunctive relief and dismissed the cause, the decree specifically reciting that it was bottomed on the authority of Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32, decided May 5, 1934, in which the Supreme Court set aside a decree enjoining an employee from engaging in employment contrary to the terms of the contract.
Judge Sturgis, in his opinion, (p. 818 of 98 So.2d) said:
"The character of the employment and relation of the parties in Love v. Miami Laundry Co., supra, are not analogous to the case on appeal; but the controlling factor distinguishing that case is that it was decided according to the common law governing contracts executed prior to the enactment of Chapter 28048, Laws of Florida, Acts of 1953 (F.S. § 542.12, F.S.A.), whereas the case on appeal involves a contract executed after the enactment and is governed by the statute which provides, * * *.
"* * *
"F.S. § 542.12, F.S.A. clearly supersedes the common-law rule enunciated in Love v. Miami Laundry Co., supra. *881 [118 Fla. 137, 160 So. 35] The permissory language of the statute, whereby agreements of the character in suit `may', in the `discretion' of the court, `be enforced by injunction,' does not imply that the court is vested with an absolute or arbitrary discretion, and is construed as requiring that the discretion shall be reasonably exercised to the end that the object of the statute may not be nullified. The relief cannot be withheld when the proofs, as in the case on appeal, reveal no other alternative. Weston v. Jones, 41 Fla. 188, 25 So. 888; Mitchell v. Duncan, 7 Fla. 13, 14. The provisions of the instant contract relating to time and area are found to be reasonable, and well within the directive of the statute, and it is not otherwise harsh, oppressive or unjust.
"* * *
"Reversed and remanded, with directions to enter a decree granting injunctive relief in accordance with the conclusions expressed herein."
In 14 U. Miami L. Rev. 375, there appears an interesting acticle by Honorable Harold B. Wahl, entitled "A Covenant Not to Compete: A Valid Restriction on Sale of Vessel." In this article the author states:
"Here we are concerned with a rather narrow facet of the general problem, that is, how far a restrictive covenant  a covenant not to compete  may validly run with the sale of a vessel, or be enforced in equity as a personal covenant, and bind parties having notice but not expressly agreeing thereto.
"The Supreme Court of the United States in an early case [Oregon Steam Nav. Co. v. Winsor, 87 U.S. (20 Wall.) 64 (1874)] [22 L.Ed. 315] upheld as valid a stipulation by the vendor of a vessel that the vessel should not be used within a reasonable region or distance so as not to interfere with vendor's business or trade. There the Supreme Court flatly upheld as valid a provision in a contract for the sale of a vessel, that the vessel should not be used for ten years in the waters of California where the vendor operated. A later decision of the Supreme Court to the same general effect is Cincinnati P B S & P Packet Co. v. Bay. [200 U.S. 179, [26 S.Ct. 208, 50 L.Ed. 428] (1906).] In this case the Supreme Court held that whatever difference of opinion there might be with regard to the scope of the Sherman anti-trust law, there had been no intimation from anyone that such a contract, made as part of the sale of a business, and not as a device to control commerce, would fall within the act.
"Such provisions are regarded as an ancillary restriction and thus outside the anti-trust laws. They are governed by state law, which universally recognizes them as valid. [Recognition of this principle in Florida is illustrated by recent decisions. E.G., Tri-Continental Financial Corp. v. Tropical Marine Enterprises, Inc., 265 F.2d 619 (5th Cir.1959), West Shore Restaurant Corp. v. Turk, 101 So.2d 123 (Fla. 1958); Janet Realty Corp. v. Hoffman's Inc., 154 Fla. 144, 17 So.2d 114 (1944).]"
In the case of West Shore Restaurant Corp. v. Turk, Fla. 1958, 101 So.2d 123, involving restrictive covenants for a period of five years, Mr. Justice O'Connell, speaking for the Supreme Court, p. 129, said:
"Covenants not to compete are in the best of circumstances difficult to enforce. If the covenantor wishes to avoid the agreement the covenantee is required to become a policeman and a detective to catch him. When the covenantee is able to prove a breach he finds it most difficult to prove, with the certainty required by law, the damages which he has suffered. For these reasons there are few types of contracts which require greater attention by the courts in their enforcement, and in so doing the moral obligation of the covenantor, *882 the obligation to observe the spirit as well as the letter of the agreement, must be considered and enforced.
"The Supreme Court of Colorado expresses this well in Whittenberg v. Williams, 1943, 110 Colo. 418, 135 P.2d 228, 229, citing an earlier opinion of that court:
"`Where one is so lost to a sense of moral obligation as to accept a full consideration for his stock in trade and good-will, upon express condition that he refrain from again entering that business for a limited time, within a certain territory, and then immediately, having pocketed the fruits of the agreement, deliberately and wilfully ignores the controlling condition thereof, courts should certainly not hunt for legal excuse to uphold him in such moral delinquency.' Barrows v. McMurtry Mfg. Co., 54 Colo. 432, 449, 131 P. 430, 436.
"This cause is reversed for entry of a summary decree in favor of the plaintiff, as above outlined, and for further proceedings in accordance herewith."
In 46 A.L.R.2d 119-396, inclusive, there is an exhaustive annotation on "Enforceability of covenant against competition, ancillary to sale or other transfer of business, practice, or property, as affected by territorial extent of restriction." This, with the annotation at 45 A.L.R.2d 77, provides a comprehensive view of the varied treatment afforded covenants similar to the one here involved.
Upon consideration of the terms of the applicable statute and the factors enunciated in the cases heretofore cited and upon careful analysis of the evidence upon which the chancellor acted, we conclude that the chancellor erred in his final decree in refusing to enjoin the defendant-appellees from further breaching their covenant not to compete.
The decree of dismissal is reversed and the case remanded with instructions that the court enter a decree enjoining the appellees from further breaching their contract for the balance of the ten year period set forth in the contract and proceed to a determination of the issues of damages of the respective parties in this suit.
SMITH, C.J., and KELLY, CLIFTON M., Associate Judge, concur.