987 So.2d 763 (2008)
USI INSURANCE SERVICES OF FLORIDA INC., Appellant,
v.
Frank PETTINEO, Pettineo Insurance Agency, Inc., a Florida Corporation, Dawn Matricardi and Carl Sallade, Appellees.
No. 4D08-303.
District Court of Appeal of Florida, Fourth District.
July 16, 2008.
Rehearing Denied August 29, 2008.
*764 Christopher N. Bellows, Rodolfo Sorondo, Jr., and Marilyn J. Holifield of Holland & Knight, LLP, Miami, for appellant.
James E. Zloch of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Fort Lauderdale, for appellees Frank Pettineo and Pettineo Insurance Agency, Inc.
Martin B. Woods of Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Fort Lauderdale, for appellees Dawn Matricardi and Carl Sallade.
*765 MAY, J.
The buyer of an insurance agency appeals an order denying its request for a temporary injunction to enforce a non-compete agreement. It argues the trial court relied upon the wrong version of the applicable statute and case law that pre-dated the statute's amendment of July 1, 1996, to reach its decision. We agree and reverse.
The seller and primary focus of the injunctive relief sold his insurance agency to the buyer by way of an Asset Purchase Agreement executed in May 2006. The Agreement provided for payment of $1,000,000 at closing and an employment arrangement by which the buyer would pay the seller a salary plus fifty percent commission. The Agreement calculated annual commission payments as part of the purchase price, the aggregate of which was capped at $4,500,000. The Agreement provided for the sale and transfer of interest in "all of Seller's Client Accounts" and "any Goodwill" relating to those accounts "or otherwise to the Business." The assets included the seller's client lists and related confidential information.
A non-compete provision in the Agreement required the seller to refrain from directly or indirectly carrying on a business that provides any insurance-related services within a specified territory for five years.[1] A confidentiality provision prohibited the seller from disclosing confidential information; and a non-solicitation provision precluded the seller from soliciting or providing services to any client of the buyer.
During his tenure as an employee, the seller voiced his concern about perceived deficiencies in the way the buyer serviced clients. Worried that this would result in a loss of clients and commissions, the seller approached the buyer and re-negotiated a reduced, accelerated pay-out totaling $2.2 million.
The parties executed an amendment to the Agreement, which reaffirmed the non-compete provision and acknowledged that payment of the additional consideration constituted "full consideration for [the parties'] respective Restrictive Covenants, and associated Goodwill included in the Acquired Assets." The amendment deleted a provision that appeared in the original Agreement, which prevented the buyer from taking action adversely affecting the seller's "ability to earn Annual [commission] Payments."
Subsequently, the buyer altered its business strategy and no longer issued policies under a certain minimum dollar amount. Those smaller policies were referred to other entities. The seller e-mailed himself his entire "book of business." The next day, the buyer fired the seller.
The seller filed an action against the buyer for breach of his employment agreement. The buyer filed a counter-claim against the seller and third-party claims against the new agency established by the seller and two of the seller's former employees who assisted him in reviving his insurance business. The buyer requested a temporary injunction to enforce the non-compete provision.
The trial court denied the buyer's request for a temporary injunction. It is from this order that the buyer appeals. We reverse.
*766 The error in this case stems from the application of section 542.33, the predecessor version of section 542.335, Florida Statutes (1996), which required a burden of proof that simply no longer exists. See Ch. 96-257, § 1, at 983, § 2, at 987, Laws of Fla. The newer version places a substantially smaller burden on the party establishing the need for injunctive relief and shifts some of the burden on the defending party. The trial court failed to recognize this burden shift in its analysis.
Relying on case law applying the superseded section 542.33, Florida Statutes (1995), the trial court incorrectly required the buyer to establish that it remained in "a like business" to carry its initial burden of proving the existence of a legitimate business interest. See Wolf v. James G. Barrie, P.A., 858 So.2d 1083, 1085 (Fla. 2d DCA 2003). Section 542.335, however, allows an enforcing party to establish prima facie the enforceability of the agreement itself, after which the party opposing enforcement can raise "as a defense the fact that the person seeking enforcement no longer continues in business in the area or line of business that is the subject of the action to enforce the restrictive covenant." § 542.335(g)2. (emphasis added).
To establish that the agreement itself is lawful and enforceable, a party must simply "plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." § 542.335(1)(b). Once the party has established that the restraint is reasonably necessary to protect the legitimate business interest, the burden shifts to the party opposing enforcement of the agreement to establish that it is overbroad or otherwise not reasonably necessary. § 542.335(c); Balasco v. Gulf Auto Holding, Inc., 707 So.2d 858, 859 (Fla. 2d DCA 1998).
Any violation of an enforceable agreement gives rise to a presumption of irreparable injury, and shifts the burden to the party opposing enforcement to establish the absence of such injury. § 542.335(1)(j); Am. II Elecs., Inc. v. Smith, 830 So.2d 906, 908 (Fla. 2d DCA 2002) (recognizing that "a party seeking to enforce a restrictive covenant by injunction need not directly prove that the defendant's specific activities will cause irreparable injury if not enjoined").
Section 542.335 provides a non-exhaustive list of legitimate business interests, including "[s]ubstantial relationships with specific prospective or existing customers" and goodwill associated with an "ongoing business or professional practice" or "specific geographic location." § 542.355(1)(b). By the terms of the Agreement, the buyer purchased the seller's former clients along with the goodwill associated with the insurance business. Enforcing the terms of the non-compete provision by issuing a temporary injunction was reasonably necessary to protect both those interests. See JonJuan Salon, Inc. v. Acosta, 922 So.2d 1081, 1083-84 (Fla. 4th DCA 2006).
We emphasize the important distinction between a non-compete provision in an asset purchase agreement and one that is incidental to an employment agreement. In the former, the non-compete provision is part and parcel of the sale of the business. In the latter, it is an incidental condition of employment. See Kroner v. Singer Asset Fin. Co., 814 So.2d 454, 456 (Fla. 4th DCA 2001). As a purchaser of the assets and goodwill of a business, the buyer has a legitimate business interest in preventing the seller from servicing even former clients who are currently not seeking a policy large enough to meet the new minimum dollar amount established by the buyer. W. Shore Rest. Corp. v. Turk, 101 So.2d 123, 128 (Fla.1958) (The "purchaser *767 of the good will of a business and its goods is entitled not only to the protection of customers and patrons, but to enter the field of competition unhampered by the adverse influence of the seller." (quoting Wilson v. Pigue, 151 Fla. 734, 10 So.2d 561, 563 (1942) (en banc))).
The seller cannot sustain his defense that USI no longer operates in the pertinent "line of business." § 542.335(1)(g)2. Parties to the sale of a business are free to forge agreements "which have for their object the removal of a rival and competitor in a business." Massari v. Salciccia, 102 Fla. 847, 136 So. 522, 524 (1931). Under the re-negotiated Agreement, the buyer paid $2.2 million to ensure the seller would not compete for five years in the insurance industry. The buyer's restructuring of the type of policies it would sell and those it would refer to other agencies did not remove it from the line of business that the seller agreed to avoid. While the buyer may not currently serve that population, it purchased the right to do so.
Because the buyer established that the non-compete provision was reasonably necessary to protect its legitimate business interest, the trial court should have temporarily enjoined the seller. § 542.335(1)(g)-(j). Upon remand, the temporary injunction should be entered to maintain the status quo until the trial court has the opportunity to resolve the remaining issues, such as the alleged breach of the Agreement.
The trial court also erred by denying the temporary injunction against the seller's former employees because they had not signed the restrictive covenant in the Asset Purchase Agreement. "There is no doubt that a court can enjoin others who were not parties to the non-compete agreement" as long as they "receive notice and have an opportunity to be heard." Leighton v. First Universal Lending, LLC, 925 So.2d 462, 465 (Fla. 4th DCA 2006); see Fla. R. Civ. P. 1.610(c). Thus, the temporary injunction should include the third-parties as it relates to the seller's efforts in restarting his insurance business.
Reversed and remanded for entry of a temporary injunction.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] The non-compete provision prohibited the seller from participating in, "without limitation, the providing of (i) insurance agency and brokerage, and related insurance services ... (ii) managed care consulting services and related legal assistance; (iii) human resource and employee compensation consulting services and related legal assistance; and (iv) any insurance or financial services relating to any of the foregoing."