304 So.2d 511 (1974)
John E. DALTON, Appellant,
v.
Constance S. DALTON, Appellee.
No. 74-282.
District Court of Appeal of Florida, Fourth District.
December 13, 1974.
Irwin L. Langbein, West Palm Beach, for appellant.
Albert T. Sims, West Palm Beach, for appellee.
BROWN, CECIL H., Associate Judge.
This interlocutory appeal is from an order dated January 18, 1974, entered following *512 a hearing on September 7, 1973 in the lower court. The hearing was on a motion by appellee to have appellant cited for contempt for his failure to pay support for two children over eighteen years of age, and who became adults by operation of law on July 1, 1973. See Chapter 73-21, Laws of Florida.
The question arose from an agreement between the parties, dated August 6, 1971, and incorporated by reference in a Final Judgment of Dissolution of Marriage entered August 31, 1971. The only portions of that agreement relevant here are the following:
* * * * * *
"... Three children were born of the marriage:
Constance Ann  Date of birth: August 19, 1953
Nancy Savage  Date of birth: October 12, 1954
* * * * * *
"(3) SUPPORT OF CHILDREN
The Husband in this Agreement is chiefly concerned with the welfare and development of the parties' children. He is financially unable to make commitments in regards to college education and other areas of potential need. When and where he determines a child evidences a true need, he will participate as he is able, if the support monies routinely allocated do not cover the requirements.
"The Husband, during his lifetime and during the minority of the children, shall pay to the Wife ... These payments shall terminate upon marriage, self-supporting status, coming of age or an indefinite moving from the home of the parental custodian of each child  whichever shall first occur. Said payments shall not be made while a child is in college, unless her attendance at college permits her to live at home.
* * * * * *
"Until the children have all attained majority by age or marriage, the Husband will maintain Blue Cross-Blue Shield ..."
The order from which this appeal is prosecuted contained the following finding:
"... that it was the parties' intent at the time they entered into the Property Settlement Agreement on August 6, 1971, which was subsequently incorporated into the Final Judgment of Dissolution of Marriage entered August 31, 1971, to have the Husband's obligation for support of his daughters continue until they reached the age of twenty-one (21) years."
That court required appellant to pay support which had accrued for the two oldest daughters subsequent to July 1, 1973. That finding and order have been assigned as error, briefed and oral argument presented thereon before this Court.
While this Court has not had occasion previously to pass upon this point, either this question or questions closely allied thereto have been before each of our sister appellate courts. The opinions in those cases, however, are of such recent vintage that the learned judge of the lower court did not have the benefit of them at the time of the entry of his order under attack here. Those cases are in the chronological order of their appearances in the advance sheets: White v. White, Fla.App. 1974, 296 So.2d 619; Ackerly v. Ackerly, Fla.App. 1974, 296 So.2d 66; Daugherty v. Daugherty, Fla.App. 1974, 293 So.2d 394; Finn v. Finn, Fla.App. 1974, 294 So.2d 57; Field v. Field, Fla.App. 1974, 291 So.2d 654.
In Field, supra, the lower court, while considering a petition of the husband filed in November, 1972, for modification of alimony and child support, sua sponte, changed the termination date for child support payments from twenty-one (21) to eighteen (18). The Appellate Court held this to be a misinterpretation of Chapter 73-21, Laws of Florida and reversed.
*513 In Finn, supra, the original Final Judgment was silent as to when child support would terminate. It does not appear from the opinion the children were even referred to as minors. Upon subsequent stipulated facts that the children became eighteen years of age in September, 1973; that the father thereupon stopped paying child support; that the children were not physically or mentally disabled and were now in college, the lower court, construing Chapter 73-21, required the father to pay support until the children reached the age of twenty-one. This order was affirmed upon the apparent theory that the children were still dependent and that the order requiring support, having been entered before the enactment of Chapter 73-21, constituted an existing obligation to pay support until the children reached twenty-one.
In Daugherty, supra, there is a reference in the opinion to the word "minor" which might lend some credence to a possible reference to the use of the word minor in the Final Judgment there under consideration. Otherwise it is indistinguishable on its facts from Finn, upon which authority Daugherty was reversed. In Ackerly, supra, the facts are again indistinguishable from what appears of record from those in Finn. The Appellate Court citing Field nevertheless held the right to maintenance and support pre-existed within the purview of the language in Chapter 73-21 and affirmed.
In the case sub judice, the lower court heard no testimony, received no evidence, reconciled no disputed issues of fact. In an instrument filed in the record and entitled "Index of Supplementary Appendix to Appellant's Brief on Interlocutory Appeal", we find an order of the lower court dated June 4, 1974, in the following words:
"On hearing on the motion of the former husband John E. Dalton for an order establishing testimony, the court finds
"That at the hearing held September 7, 1973 no testimony was tendered or introduced by either party concerning the parties' intent at the time they entered into the property settlement dated August 6, 1971, as to whether the husband's obligation for support of his daughters should continue until they reached the age of 21 years, other than that agreement itself."
The finding as to the intent of the parties was made by an examination of the contract between the parties and therefore is not entitled to the weight which would otherwise be accorded the findings of a Chancellor when the record reaches an appellete court. In West Shore Restaurant Corp. v. Turk, Fla. 1958, 101 So.2d 123, Mr. Justice O'Connell affirmed this proposition in the following language:
"... In such a case the presumption of correctness of the rulings of the chancellor are not as strong as where the evidence is conflicting or where the chancellor heard the witnesses himself. Harmon v. Harmon, Fla. 1949, 40 So.2d 209, 212; Holland v. Gross, Fla. 1956, 89 So.2d 255, 258.
"The presumption of correctness due the ruling of a chancellor based on a written record, where his effort has been directed to determining the probative force and legal effect of the written record, is slight for the reason that we have everything before us that he had before him and we have the same opportunity to weigh it as did the chancellor."
Appellant asserts that a careful study of the agreement reveals the parties steadfastly avoided using the phrase "the age of twenty-one"; that this agreement was drawn at a time when there was a great national debate on the question of whether or not to lower the age of majority. The Appellee contends that we ought to be bound by a decision of the Attorney General holding in essence that support payments are vested rights in Florida, where the contract or judgment was entered, prior to the first day of July, 1973. Appellee makes little of the Chancellor's *514 finding as to the intent of the parties. An examination of their agreement reveals the parties used freely such words as "minority," "coming of age", "obtained majority by age", etc. The age at which a person becomes of age was, at that time, subject to change. It was in fact about this time that voting age was reduced on the national level to eighteen. Shortly thereafter Chapter 73-21, Laws of Florida, was enacted changing the age at which a person reaches adulthood to eighteen, with the exception of certain constitutional limitations. On this narrow issue, we are persuaded to Appellant's view. We find a lack of or insufficiency of evidence of intent, either expressed or implied, by the parties in their agreement to bind Appellant to pay support until the children reached age twenty-one. The remaining issue then resolves itself to the question of whether or not we are required to affirm the lower court in any event based on the theories expressed in Finn, Daugherty and perhaps Ackerly, supra. We think not. Section 3 of that law upon which Appellee's case now rests contains the following very interesting language:
"Section 3. This act shall operate prospectively and not retrospectively and shall not affect the rights and obligations existing prior to the effective date of this act." (Emphasis Added)
There is little doubt but that a contract between the parties, which firmly and unambiguously fixes the date of termination of support payments at twenty-one, ought to be enforced under the language of this statute, as an existing contractual right. There is a constitutional reason why a statute cannot affect existing contractual rights. Any other right a person may have in this area would necessarily have to be a creature of the law, common or statutory. In either event such law is subject to change. This is fundamental. Section 4 of the same act repealed all laws inconsistent therewith.
On July 1, 1973, at the time Chapter 73-21 became effective, there was then existing and had been from time immemorial under the common law the right in a parent to the services and earnings of a minor child. In 24 Fla.Jur., Parent and Child, Section 8, it is stated:
"A parent who is providing a home for his minor child and supporting him is entitled to the child's reasonable and proper labor. The parent may avail himself of this right by requiring the child to render services in the home or in the business affairs of the parent, or by placing it to labor for others and recovering its wages ..."
See also the allied questions in Haddock v. Florida Motor Lines Corporation, Fla. 1942, 150 Fla. 848, 9 So.2d 98, and the subsequent case of Covey v. Eppes, Fla. 1963, 153 So.2d 3. Could it then be said, for instance, that parents at the time of the enactment of the statute had a vested right to the services and earnings of their minor children who were then employed?
In White, supra, which we have not previously alluded to, the First District, speaking through Judge Boyer, who reviewed the case law in Florida existing before and after July 1, 1973, as well as decisions from other jurisdictions, at length, reached a conclusion different from that reached in Finn, Ackerly and Daugherty. We believe our decision here should follow that announced by Judge Boyer. The facts only differ there from those here in that there a Final Judgment was being construed which had no reference to a termination for the support ordered; such as, the words "coming of age", "reached majority", and "during minority". In his analysis of the Finn case, Judge Boyer said:
"The court, in the Finn case, recited that Section 3 indicates that the statute was not to have an impact on obligations existing prior to its effective "date and that prior to said date the father of said children was obligated to support said children until they attained age 21. However, in the case sub judice, there *515 was no such obligation. As stated in the first paragraph of this opinion the original final judgment was silent as to the period for which the support payments were to continue."
We also have carefully considered the Finn case and believe the statement therein to which Judge Boyer refers is a holding by that court as to law applicable to "open end" support orders as it existed prior to July 1, 1973, rather than a finding as to the content or intent of the Final Judgment there under consideration. The facts in the Finn case were submitted to the lower court by stipulation. The portion of the lower court's order under consideration in the Finn case was quoted there as follows:
* * * * * *
"Custody of the adoptive children of the parties, to-wit: Curtis Finn and Keith Finn, is awarded to Mildred J. Finn with liberal visitation rights in Leonard H. Finn. Leonard H. Finn shall pay to Mildred J. Finn as and for child support for Curtis and Keith Finn the sum of $100.00 per week."
* * * * * *
It is therefore plain to see that order was "open ended". In any event, we equate the lack of an intent on the part of the Appellant to pay support to the age of twenty-one as found here to be equivalent to an "open ended" support obligation. Therefore without citing further extensively from the opinion in White, suffice it to say, that unless the original agreement between the parties fixes the date for termination of child support at a stated age, it is our view that such support terminates, and in this instance terminated upon the children reaching the age of eighteen.
Accordingly the order of the lower court is reversed with directions to enter an order consistent with this opinion.
OWEN, C.J., concurs.
WALDEN, J., dissents without opinion.