# Third District Court of Appeal

## State of Florida

Opinion filed March 24, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D20-1121; 3D20-1122
Lower Tribunal No. 20-7330

_____

## Family Heritage Life
## Insurance Company of America, et al.,
Appellants,

vs.

## Combined Insurance Company of America,
Appellee.

Appeals from a non-final order from the Circuit Court for Miami-Dade County, Martin Zilber, Judge.

Shapiro, Blasi, Wasserman & Hermann, P.A., and Adam S. Chotiner (Boca Raton); Phillips Murrah P.C., and Michele C. Spillman (Dallas, Texas), Pro Hac Vice, for appellant Family Heritage Life Insurance Company of America; Tripp Scott, P.A., and Stephanie C. Mazzola, Catalina M. Avalos and Sarah M. Leon (Fort Lauderdale), for appellants Reineldo Urgelles and Antonio Pineda.

Lewis Brisbois Bisgaard & Smith, LLP, Miguel A. Morel and Kristen Perkins (Fort Lauderdale);  Lewis Brisbois Bisgaard & Smith, LLP, David L. Luck and Jenna L. Fischman, for appellee.

Before LOGUE, HENDON and GORDO, JJ.

GORDO, J.

In these consolidated appeals, Family Heritage Life Insurance Company of America, Reinaldo Urgelles, and Antonio Pineda, appeal the trial court's entry of a temporary injunction against them. We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(B). Because the trial court made the requisite findings and did not abuse its discretion in entering the temporary injunction, we affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Combined Insurance Company of America, the plaintiff below, is in the business of selling, through its agents, supplemental accident, health, and life insurance products throughout North America. Family Heritage is a direct competitor of Combined.

Urgelles and Pineda are former employees of Combined. Both were members of a special team at Combined called Division 48, which is made up of Spanish-speaking employees who target Spanish-speaking markets. It is undisputed that Combined invests significant resources into Division 48 and that all employees of that Division receive specialized training.

Prior to his termination in September of 2019, Urgelles was the Senior Executive Market Director for Combined's Division 48 and had

2

around 400 employees reporting to him. Following his termination, Urgelles began working at Family Heritage. In November of 2019, Pineda, a sales associate, left Combined and joined Family Heritage, under Urgelles.

As part of his employment with Combined, Urgelles was in possession of a document called the Alpha Roster. This list contained the names and contact information for the agents in Division 48. While still at Combined, Urgelles emailed himself a copy of this confidential document to his personal email account. Although the contact information for each Combined agent is accessible through the State's licensure website, the fact that they are members of Division 48 is not public information and is known only to those at Combined in possession of the Alpha Roster.

Both Urgelles and Pineda signed employment agreements with Combined, which contained confidentiality clauses and restrictive covenants. In the confidentiality provision, Urgelles and Pineda acknowledged that they would be receiving confidential information from Combined and agreed not to disclose or use that information to compete against Combined. The restrictive covenants prohibited Urgelles and Pineda from directly or indirectly, alone or with others, soliciting employees or policyholders of Combined within the Florida market for two years

3

following employment. They also acknowledged that a breach of the confidentiality clause or restrictive covenants would result in irreparable harm, which would not be adequately remedied through monetary relief.[1]

Following the loss of several employees and policyholders to Family Heritage, Combined sent cease and desist letters to Urgelles and Family Heritage in November of 2019. After Pineda left Combined for Family Heritage and it lost additional policyholders and employees, Combined sent a cease and desist letter to Pineda in December of 2019. Thereafter, Combined filed suit, alleging tortious interference as to all and breach of contract against Urgelles and Pineda, and seeking injunctive relief. Combined later filed a motion requesting an injunction.

The trial court held a two-day evidentiary hearing on the motion. Combined presented evidence, through the testimony of its corporate representative and an assistant vice president that Division 48 was one-of-a-kind and that the agents in this division received extensive, specialized training. It presented evidence that it took measures to protect its

---

[1] The agreements provided: "[A] breach by the Employee of any of the covenants or agreements set forth [in preceding paragraphs, relating to goodwill, confidentiality, unfair competition, and restrictive covenants], would cause each of the Combined Companies irreparable damage that could not adequately be compensated for by only monetary compensation." They further stated that "in the event of any such breach" Combined could apply for and would be entitled to injunctive relief.

confidential information, including the Alpha Roster; that Urgelles had emailed it to his personal email and was in possession of it; and that disclosure of this roster to a direct competitor would be disastrous. Combined also brought forth evidence that once Urgelles began working for Family Heritage, approximately 150 agents left Combined and began working at Family Heritage. Further, there was evidence that Urgelles and Pineda both solicited Combined's agents and policyholders to leave Combined for Family Heritage. At the hearing's conclusion, the court granted the temporary injunction, and entered a written injunction order specifying its findings.

The trial court's detailed order makes findings in support of its conclusions that Combined had a substantial likelihood of success on the merits, lacked an adequate remedy at law, had a likelihood of irreparable harm absent the entry of an injunction, and that the injunction would serve the public interest. The order then enjoins Urgelles, Pineda and Family Heritage from the following:

> (a) Soliciting or attempting to solicit on behalf of another insurer, any insurance of the kind or character sold by Combined (including but not limited to accident & health, Medicare Supplement and life insurance) to any of Combined's policyholders in the state of Florida; (b) Inducing, or attempting to induce, any of Combined's policyholders within the state of Florida to cancel,

5

lapse or fail to renew their policies with Combined; (c) Directly or indirectly inducing or attempting to induce any of Combined's directors, officers, sales representatives, agents or other employees in the state of Florida to terminate their employments with Combined or to sell insurance for any other company; (d) Directly or indirectly divulging or disclosing the identities, skills, talents, knowledge, experience, compensation, and preferences of any Combined Division 48 employees or any other confidential information of Combined acquired during Urgelles and Pineda's employment with Combined; and (e) Destroying, hiding, deleting, retaining or altering any document or electronically stored information relevant, or which could lead to the discovery of relevant information, to the subject matter of this lawsuit.

The order further required Urgelles and Pineda to cease and desist from the use of confidential information and return anything confidential in their possession, and Family Heritage to cease and desist from benefitting from Urgelles and Pineda's breaches.

**STANDARD OF REVIEW**

The lower tribunal's findings of fact on preliminary injunctions are subject to an abuse of discretion review and are left undisturbed so long as they are supported by competent, substantial evidence. See, e.g., Quirch Foods LLC v. Broce, 45 Fla. L. Weekly D2336, at *6 (3d DCA Oct. 14, 2020). Related questions of law are reviewed de novo. Id.

6

# LEGAL ANALYSIS

I. <u>Whether the Issuance of the Temporary Injunction was Proper</u>

To obtain a temporary injunction, Combined was required to prove "(1) a substantial likelihood of success on the merits, (2) a lack of an adequate remedy at law, (3) the likelihood of irreparable harm absent the entry of an injunction, and (4) that injunctive relief will serve the public interest." <u>Id.</u> at *7 (quoting <u>Scott v. Trotti</u>, 283 So. 3d 340, 343 (Fla. 1st DCA 2018)).

*1. Substantial Likelihood of Success on the Merits*

Combined presented evidence that following Urgelles's departure to Family Heritage, about 150 Combined agents left to work for Family Heritage. It also presented evidence that Urgelles received compensation from Family Heritage for the recruitment of at least one former Combined employee and that another former Combined agent now working for Urgelles at Family Heritage had solicited a Combined policyholder. As for Pineda, Combined presented evidence that he solicited a Combined agent to work for Family Heritage. Further, there was evidence that Urgelles and Pineda were in possession of and had impermissibly used the Alpha Roster, Combined's confidential information.

The trial court found that Urgelles and Pineda "violated their employment agreements with Combined" by soliciting or attempting to solicit Combined's employees and policyholders and by having used or disclosed Combined's confidential information and trade secrets. Based on this finding, which was supported by competent, substantial evidence, Combined established that it had a substantial likelihood of success on the merits.

*2. Lack of an Adequate Remedy at Law*

It is well-established that where a party demonstrates that a violation of an enforceable restrictive covenant in an employment agreement has occurred, an injunction is proper and there is no adequate remedy at law. See, e.g., Reliance Wholesale, Inc. v. Godfrey, 51 So. 3d 561, 566 (Fla. 3d DCA 2010) ("[A]lthough a trial court may award damages for a breach of an employee's agreement not to compete, 'the normal remedy is to grant an injunction. This is so because of the inherently difficult, although not impossible, task of determining just what damage actually is caused by the employee's breach of the agreement.'" (quoting Capraro v. Lanier Bus. Prods., Inc., 446 So. 2d 212, 213 (Fla. 1985))).

*3. Likelihood of Irreparable Harm*

Section 542.335, Florida Statutes, permits the entry of injunctions for violations of restrictive covenants. Subsection 542.335(1)(j) provides, in relevant part, that "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." An enforceable restrictive covenant is one in which "the contractually specified restraint is reasonably necessary to protect [a] legitimate business interest." § 542.335(1)(c), Fla. Stat. The statute then provides a non-exhaustive list of "legitimate business interests," which includes trade secrets, valuable confidential business or professional information, goodwill, and specialized training. Id. at § 542.335(1)(b). To establish this presumption, the party seeking enforcement of the restrictive covenant must show that it protected a legitimate business interest and that it was violated. See TransUnion Risk & Alt. Data Sols., Inc. v. Reilly, 181 So. 3d 548, 550 (Fla. 4th DCA 2015) (citation omitted).

Combined established, and the trial court found, that its restrictive covenants sought to protect trade secrets, confidential information, specialized training, and goodwill with policyholders. Appellants failed to rebut that presumption. We conclude there is competent, substantial

9

evidence Combined would be irreparably harmed if Appellants were not enjoined from further breaches.

### 4. Public Interest in Issuing an Injunction

"Public policy in Florida favors enforcement of reasonable covenants not to compete." Quirch Foods, 45 Fla. L. Weekly D2336, at *10 (citation omitted). "[E]nforcement of a covenant not to compete protects proprietary business interests and the enforcement of contracts." Id. (citation omitted). "[T]he public has a cognizable interest in the protection and enforcement of contractual rights." Id. (citation omitted). As we previously stated in Quirch Foods, there are many benefits to the public interest in courts upholding enforceable agreements. See id. As in that case, "neither the trial court nor Appellants have identified any public policy reason that would 'substantially outweigh the need to protect the legitimate business interest or interests'" of Combined. Id. (quoting § 542.335(1)(i), Fla. Stat.).

### II. Whether the Trial Court Properly Enjoined Family Heritage

Family Heritage argues that the injunction is improper because it is impermissibly broad. Proof of the benefit received from the former employees' breaches, however, is sufficient under Florida law to maintain an injunction against the new employer, particularly where the employer was on notice of the violations. Cf. USI Ins. Servs. of Fla., Inc. v. Pettineo,

987 So. 2d 763, 767 (Fla. 4th DCA 2008). "There is no doubt that a court can enjoin others who were not parties to the non-compete agreement" as long as they "receive notice and have an opportunity to be heard." Leighton v. First Universal Lending, LLC, 925 So. 2d 462, 465 (Fla. 4th DCA 2006). "The Court can enjoin non-parties to the non-compete agreement, such as a family member of the signator or an alter ego corporation, where the nonparty is either under the signator's control or otherwise being used to aid or abet the signator in violating the non-compete clause." Winmark Corp. v. Brenoby Sports, Inc., 32 F. Supp. 3d 1206, 1221 (S.D. Fla. 2014) (citations omitted). An "injunction not only binds the parties . . . , but also those identified with them in interest, those in privity with them, and those represented by them or subject to their control." Channell v. Applied Rsch., Inc., 472 So. 2d 1260, 1263 (Fla. 4th DCA 1985) (citations omitted).

There was evidence in the record that Family Heritage knew of and was benefiting from Urgelles's and Pineda's breaches of their employment agreements. Indeed, Combined sent Family Heritage a cease and desist letter, advising it that Urgelles was not complying with the restrictive covenants in his employment agreement and had been recruiting Combined employees to join Family Heritage. Even after this letter was

11

sent, Urgelles and Pineda continued to solicit employees and policyholders from Combined on behalf of Family Heritage. Despite having been on notice of Urgelles's and Pineda's breaches, there was no evidence that Family Heritage made efforts to stop the breaches from continuing. In fact, on at least one occasion, Family Heritage compensated Urgelles for having recruited a Combined agent. We find the trial court's injunction order proper in scope in enjoining Family Heritage and those acting on its behalf or subject to its control from further benefiting from Urgelles's and Pineda's breaches.

## CONCLUSION

Combined made a prima facie showing of the violation of a restrictive covenant and the elements for issuance of a temporary injunction were satisfied. The trial court's findings were supported by competent, substantial evidence. As such, the trial court did not abuse its discretion in entering the temporary injunction.

Affirmed.